## ANNETT v. UNITED STATES.

### No. 4632.

United States Court of Appeals
Tenth Circuit.

June 26, 1953.

Rehearing Denied July 21, 1953.

Bratton, Circuit Judge, dissented.

Hayden C. Covington, Brookyln, N. Y., for appellant.

Harry G. Foreman, Norman, Okl. (Robert E. Shelton, U. S. Atty., Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

Appellant, Gene Tony Annett, was charged with knowingly failing and refusing to submit to induction into the United States Army with intent to evade service therein, in violation of 50 U.S.C.A.Appendix, § 451 et seq. He has appealed from a judgment finding him guilty and sentence imposed thereon.

The scope of review of a court of law of the actions of a local board fixing and determining a classification is a limited one. We may not weigh evidence. The decisions of the local board made in conformity with the regulations are final and binding on us, even though they may be erroneous. We may interfere only where the local board lacks jurisdiction to make the order, and it lacks jurisdiction and the order is void if there is no substantial evidence to support it. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 427, 90 L.Ed. 567, is a landmark case in this field of law. The court therein states, "We cannot read-

ily infer that Congress departed so far from the traditional concepts of a fair trial when it made the actions of the local boards 'final' as to provide that a citizen of this country should go to jail for not obeying an unlawful order of an administrative agency." It is stated that the Congressional expression that the decision of the board was final merely meant that it chose not to give administrative action under this act the customary scope of judicial review which obtains under other statutes. The court states the rule as follows: "It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous." The court states that the question of jurisdiction of the local board to issue the classification and induction order was "reached only if there is no basis in fact for the classification which it gave the registrant." This rule was followed by the District Court for the Western District of Kentucky (Louisville) in United States v. Graham, 109 F.Supp. 377, where the court held void a classification of 1-A of a conscientious objector and a minister because it was without factual support.

It is in this light that we examine the record. The record and the briefs recite in great detail the steps taken by the authorities in seeking to induct Annett into the military service. These include his original 1-A classification, a hearing and rehearing before the board and an appeal to the Appeal Board of Oklahoma. That board found that Annett should not be granted a classification either as a minister or as a conscientious objector and forwarded his file to the Justice Department for an advisory recommendation as to Annett's conscientious objector's claim. Annett was given notice to appear before Hearing Officer, R. A. Belisle. Belisle recommended against the allowing of the classification claim by Annett. His recommendations were reviewed by the Justice Department and the State Appeal Board was notified that the Justice Department concurred in the conclusions of the hearing officer.

After receiving the advisory opinion from the Justice Department, the Appeal Board upheld the local board's classification of 1-A and Annett was ordered to report for induction, but failed to appear. Thereafter he was notified that he would be given another personal appearance before the board. This time he appeared and presented further oral information to the board. His file was then reopened and he was again classified 1-A. When notified of this classification, he filed a notice of appeal. The Appeal Board again concluded that he was not entitled to the classification claimed by him and again forwarded the file to the Department of Justice for an advisory opinion. He was given a second hearing before Hearing Officer Belisle, who again recommended that his claimed classification be denied and that he be classified 1-A. The entire file and record was then reviewed by the Justice Department which again concluded that Annett had failed to establish his alleged conscientious objections were based upon deep-seated convictions arising out of religious training and belief and recommended that he be not classified as a conscientious objector. He was again so classified, refused to be inducted, and was then prosecuted with the results indicated above.

Annett produced an abundance of evidence, evidencing his membership in the Jehovah Witness religious organization and his sincerity in his religious belief that it was wrong to participate in war in any manner. He established by uncontroverted evidence that he was reared as a youth in the Jehovah Witness faith and had been a member in good standing in the Jehovah's Witnesses for a number of years. The hearing officer found that Annett became a member of the Jehovah's Witnesses in 1942 and that he testified publicly in the theocratic school which he attended and at other meetings of his sect. Annett testified that he was baptized and consecrated in 1941. He also offered evidence of good moral character and evidence tending to support his minister status as that exists in his religious organization.

The Government's case, aside from the exhibits of the official actions of the

various boards, rests upon the two reports and recommendations of Hearing Officer Belisle. In his report of December 4, 1950, he set out a number of statements made to him by persons he interviewed. The witnesses adverse to Annett merely stated that they did not believe him to be sincere and did not consider him entitled to a conscientious objector status. They all referred to the fact that in their opinion he had a poor family background. But all they stated was their opinion or conclusion. They gave no basic facts, no evidence whatever on which such belief was predicated. Thus the chief of police and long time former sheriff of Woods County, Oklahoma, stated that Annett came from a poor family background and he did not consider him entitled to a conscientious objector's rating. Assuming that this appraisal of his background was correct, it is in nowise material or indicative of Annett's status as a conscientious objector. To merely state that he does not consider him sincere without giving a single fact upon which such belief is predicated does not rise to the dignity of evidence. It states the mere belief and conclusion of the witness. Whether he is entitled to the status he sought was for the determination of the board to be made from positive evidence adduced before it. All the remaining adverse witnesses set out in Belisle's report merely stated that they did not believe he was entitled to what he sought without the statement of a single fact on which they based their belief. To illustrate, an undersheriff stated that he was not sufficiently acquainted with Annett to comment on his sincerity of this conscientious objector claim; yet he stated that he did not believe that he was entitled to it.

During the investigation, Annett was asked if he believed in self defense and he frankly stated that he did and that he would kill if necessary to defend and preserve his life. Belisle believed that this was inconsistent with the claim of religious scruples and beliefs against participation in war. In his report he stated, "Your hearing officer was not impressed with the manner in which the registrant answered questions propounded to him. There is an abundant amount of evidence furnished in his behalf, principally by members of his own faith. However, a large portion of it is devoted to his ministerial activities, which your hearing officer is not endeavoring to pass upon other than in connection with the claim of registrant as a conscientious objector. Your hearing officer is unable to reconcile the belief of the registrant that he may, under the Scriptures, defend himself even to the extent of killing, but not able, under his faith, to serve his country in military service; especially, where he was unable to state his authority for the defense of himself in the same Bible which he uses to sustain his objections. Your hearing officer is not satisfied with the sincerity of the registrant for the further reason that the evidence furnished by the registrant was inadequate and did not have that quality necessary to sustain his position."

It is thus clear that Belisle applied an erroneous standard in determining that Annett was not entitled to a conscientious objector status. The standard laid down in the statute [1] is religious training and belief opposed to participation in war in any form and as stated in the statute, "Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation * * *." Annett's positive uncontradicted testimony established that his religious beliefs met this test. The mere fact that he was willing to fight in defense of his own life does not mean that he did not have good faith religious scruples based upon the teachings of his church against the command of his country to go to war and kill therein.

In his second report filed February 14, 1952, Belisle likewise concluded that Annett was not entitled to the status claimed by him. These conclusions were based in general on the same line of information reported in his first report. In fact, it was based in large part upon the same

1. 50 U.S.C.A.Appendix, § 456(j).

statements of the same witnesses as in the first report. Illustrative of the character of the evidence are the following excerpts. A new member of the local board who had not yet taken any official action and was not personally acquainted with Annett nonetheless stated that he felt he was no more entitled to a deferred classification than men of other religious faiths. The acting chairman of Local Board No. 80, Woods County, Oklahoma, stated that he did not believe Annett was entitled to the classification of a minister because he did not devote his full time to the ministry but was employed at farming and painting and merely attended Jehovah Witness meetings on the side, and so run all the statements relied upon by the Government. In his second report recommending a rejection of the claimed status, Belisle stated that the background of Annett was not good in that his parents were of questionable character and reputation and had formerly belonged to the Catholic Church but joined Jehovah's Witnesses in the latter part of the 1930's; that this was quite a departure and that the two religions could in no way be reconciled. What materiality this had upon whether Annett became a member in good faith of the Jehovah Witness Church and had a religious conscientious objection to going to war is difficult of comprehension. Belisle did report that Annett was raised almost wholly in the faith of Jehovah's Witnesses and was endeavoring to rise above the reputation of his family and in some respects had some fine qualities. He also reported that Annett furnished abundant testimony and evidence of his sincerity. Belisle was impressed by the fact, and no doubt influenced in his conclusions, by his impression that Annett did not have "that humility ordinarily incident to one having that deep, sincere, religious objection to service in our military forces." Based upon this he stated, "It is, therefore, the considered opinion of your hearing officer that the evidence is insufficient to sustain the position taken by the registrant."

The statute does not make humility, whatever that means, an element of one's right to exemption from military service on the ground of religious scruples and beliefs against war. To be sincere in the teachings of Jehovah Witness religion does not require that one must grovel and fawn or be timid. One may stand up and give manly straight-forward answers to questions propounded to him without fear of having his good faith in his religion impugned. A reading of the record compels the conclusions that the board was of the view that Annett's belief in his right to fight to preserve his life was inconsistent with any sincere religious belief against participation in any phase of war. This is also the position taken by the Government's counsel in the brief filed in this court. As pointed out, this is an erroneous conclusion not in line with the standard laid down in the statute and furnishes no basis for the action of the board.

■ The record is devoid of a single act, word or any conduct by Annett or of the testimony of any witness to a single fact which would tend to show that Annett was not a member in good faith of the Jehovah Witness religious organization with religious convictions against participation in war. A careful analysis of the record compels the majority to conclude that there is a complete lack of any substantial evidence to support the conclusions and findings of the board and its order was therefore void. The order of the board being void, Annett was guilty of no offense in refusing to submit to induction. Other issues are presented in this appeal which because of the conclusion we have reached on the main issue need not be considered.

Since the record is devoid of any evidence sustaining the finding of the board that Annett was not a member in good faith of Jehovah's Witnesses, possessed of an honest religious conviction against participation in war, the judgment cannot stand and it is, therefore, not necessary to separately inquire whether there is evidence sufficient to support the finding that he was not a minister of the Jehovah Witness faith.

The judgment of the trial court is Reversed and the cause is remanded with directions to dismiss.

BRATTON, Circuit Judge (dissenting).

Congress committed to local draft boards and appeal boards—not courts—power to determine the classification of registrants under the Selective Service Act. A court is not warranted in weighing the pros and cons of the evidence to determine whether a particular classification made by a local board or an appeal board was justified. The decision of either board made in conformity with the Act and the regulations is final even though it may be erroneous. The board cannot act arbitrarily or capriciously. It must exercise an informed discretion based upon the facts. Its power must be exerted consistently with the exactions of due process. But if the board acts in accordance with the Act and the regulations, and consistently with due process, and there is basis in fact for the classification, the action of the board is conclusive and should not be disturbed even though the court or jury might reach a different conclusion based upon the facts. In other words, a court will not review the action of a board in classifying a registrant for mere error. And abuse of discretion on the part of the board in classifying a registrant must be clearly shown before a court will declare it void. If there is any rational basis of fact for the classification, the action of the board will be sustained. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59.

The majority hold that the placing of appellant in class 1-A was without any factual basis. The effect of the holding is that the action of the board was arbitrary and capricious and therefore cannot stand. I am unable to share that view. It may be conceded without so deciding that the reports and recommendations of the Department of Justice contained statements which were not proper, and that they referred to opinions and conclusions of certain persons which were not based upon disclosed facts. But the reports and recommendations were only informative and advisory. They were in no sense binding or controlling, and there was no showing whatever that the appeal board adopted, followed, or even considered them. Separate and apart from the reports and recommendations, there was adequate basis in fact for the action of the board in rejecting the claims of exemption. Appellant was twenty years of age at the time of his registration. He was single and had no dependents. For approximately five years prior to registering, his principal occupation was driving a tractor and working on a farm. He averaged about fifty hours per week and his wage or pay was approximately eight dollars per day. He also worked some in a meat packing plant but the exact time is not certain. Appellant, his father, his mother, and his three brothers were members of the Catholic church. In 1938, the entire family left that church and became members of Jehovah's Witnesses. In July, 1942, shortly after the United States entered World War II and the prospect of calling the young men of the country into service became imminent, appellant became a minister of Jehovah's Witnesses sect. Later he was regularly engaged in the business of painting and drew substantial wages therefor. His services as a minister consisted primarily of going from door to door on Sunday and distributing literature. He usually devoted from three to five hours to such activity on Sunday, and he apparently did nothing more in that field. He did not receive any financial remuneration for such services. His work was primarily that of a laborer and he received his livelihood from that source. He stated that he would defend himself, would defend his home, and would defend his brothers of the Jehovah's Witnesses organization. He further stated that he believed in the use of force as a means of self defense, as a means of protecting his home and as a means of protecting the work of Jehovah's Witnesses and those engaged therein. And he further stated that he would not be willing to go to Korea and act as a minister to the soldiers fighting there. Two of the appellant's brothers were prosecuted and convicted as draft evaders. In addition to these facts and circumstances, appellant appeared before the local board. The board —not this court—observed him, heard him, and had the opportunity to appraise his

genuineness or the lack of it in claiming exemption. The board—not this court—had the opportunity to see him and take into consideration whether his attitude was that of sincerity or of empty sham and fakery. The board—not this court—had the opportunity of hearing his voice in respect to sounding true or suggesting an underlying purpose to evade duty to his country. Viewed in the light of all the facts and circumstances, considered in their totality, there was rational basis of fact for the classification and therefore the judgment should be affirmed.