**UNITED STATES v. HARTMAN.**

No. 85, Docket 22821.

United States Court of Appeals
Second Circuit.

Argued Dec. 8, 1953.

Decided Jan. 8, 1954.

Hayden C. Covington, Brooklyn, N. Y., Clyde W. Summers, Buffalo, N. Y., on the brief, for appellant.

John O. Henderson, U. S. Atty., Buffalo, N. Y., Richard E. Moot, Asst. U. S. Atty., Buffalo, N. Y., of counsel, for appellee.

Before CHASE, Chief Judge, and AUGUSTUS N. HAND and MEDINA, Circuit Judges.

MEDINA, Circuit Judge.

Appellant was indicted for refusing to submit to induction into the Armed Forces of the United States in violation of 50 U.S.C.A.Appendix, § 462(a). Appellant pleaded not guilty, and was tried before Judge Knight and a jury. The jury returned a verdict of guilty. The appeal is from the judgment of conviction and sentencing which was entered upon the verdict.

Appellant properly filled out his "Classification Questionnaire" (SSS Form No. 100) and returned it to his local board. He stated therein that he was a minister of Jehovah's Witnesses, and that he had been formally ordained on March 26, 1950, at Dunkirk, New York. He requested that he be classified in Class IV-D, claiming exemption as a duly ordained minister of religion under Section 6(g) of Title I of the Selective Service Act of 1948.[1] In addition to his request for exemption as a minister, he stated in the questionnaire that, by reason of religious training and belief, he was conscientiously opposed to participation in war in any form, and requested the local board to furnish him with a conscientious objector form.

Thereupon, the local board mailed to appellant a "Special Form for Conscientious Objector" (SSS Form No. 150), which he filled out and returned. Appellant stated therein that, by reason of his religious training and belief, he was conscientiously opposed to participation in war in any form, and that he was further conscientiously opposed to participation in noncombatant training or service in the armed forces. He requested that he be classified in Class IV-E,[2] claiming complete exemption under Section 6(j) of Title I of the Selective Service Act of 1948 and Section 1622.20(a) of the Selective Service Regulations,[3] as a conscientious objector opposed to participation in both combatant and noncombatant training and service in the armed forces.

Appellant was notified to appear before the local board, and a hearing was held on January 9, 1951. On that date, the local board denied appellant's claim for exemption as a duly ordained minister and classified him I-A-O. This classification made him liable for military training and service as a noncombatant. On January 15, 1951, and again on February 5, 1951, appellant wrote to the local board stating that he desired to appeal the I-A-O classification.

On January 31, 1951, the local board forwarded appellant's file to the district appeal board. Thereafter, on February 16, 1951, the appeal board referred the case to the Department of Justice for an inquiry and hearing and for a recommendation by the Department. Following an investigation by agents of the Federal Bureau of Investigation, a hearing was held on May 8, 1951, at Buffalo, New York, by William Palmer, a hearing officer for the Western District of New York, at which appellant appeared in person accompanied by one Max M.

---

1. 62 Stat. 604, 611; 50 U.S.C.A.Appendix, § 456(g). Its title was changed on June 19, 1951, from "Selective Service Act of 1948" to "Universal Military Training and Service Act". 65 Stat. 75; 50 U.S. C.A.Appendix, § 451(a).

2. Class IV-E is now known as Class I-O

under present Selective Service Regulations.

3. This section of the Selective Service Regulations was changed in respects that are not here material on September 25, 1951, before appellant's final classification, and was given the number 1622.14 (a).

Mueller, a friend and fellow Jehovah's Witness who later testified on his behalf at the trial. After hearing the appellant and considering the report of the Federal Bureau of Investigation, the hearing officer concluded that the facts and circumstances presented by appellant failed to support his appeal from the action of the local board in classifying him I-A-O. He upheld the action of the local board in classifying appellant as a conscientious objector opposed to combatant military service, and he recommended that the appeal of appellant "from the action of [the local board] be denied and that his classification by [the local board] be ratified and approved." This report and recommendation of the hearing officer was concurred in by the Deputy Attorney General.

Thereafter, on August 16, 1951, the appeal board placed appellant in Class I-A-O. This classification again denied appellant the status of a full conscientious objector and made him liable for military service in a noncombatant capacity. On September 5, 1951, appellant wrote a letter to the local board wherein he stated:

"Upon receiving my I A O classification from the Board of Appeal dated August 27, 1951, I want to re-appeal this classification.

"As a regular and ordained minister of Jehovah's Witnesses, I feel that the I A O classification I received is unjust. I have been denied the 4D-minister, and in applying for the 4E-conscientious objector I was again refused. I have supplied sufficient proof in writing and in personal appearances to justify my claim."

He made the same written complaint to the State Director of Selective Service in Albany and to Selective Service Headquarters in Washington.

On November 19, 1951, the National Director of Selective Service took an appeal to the President from the action of the appeal board in placing appellant in Class I-A-O. On February 15, 1952, the National Selective Service Appeal Board placed appellant in Class I-A. This classification not only denied appellant's claim for exemption as a duly ordained minister, but it also denied him any and all status as a conscientious objector and made him liable for unlimited military service. Thereafter, appellant was duly ordered to report for induction, with the result already above stated.

We are concerned here only with the classification of I-A which was finally given appellant by the National Selective Service Appeal Board. The preceding classifications are not in issue. Reed v. United States, 9 Cir., 205 F.2d 216; Tyrrell v. United States, 9 Cir., 200 F.2d 8.

The decisive question before us is narrowly defined. Appellant contends that the I-A classification was arbitrary and capricious and without basis in fact. If not arbitrary and capricious, then the determination that he was not entitled to exemption is final. 50 U.S.C.A.Appendix, § 460(b) (3); Estep v. United States, 1946, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Dickinson v. United States, 1953, 74 S.Ct. 152.

In 50 U.S.C.A.Appendix, § 460 (b) (3) Congress made provision for the review of the actions of the local boards and the appeal agencies. This section provides that " * * * The decisions of such local board shall be final, except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe. * * * The decision of such appeal boards shall be final in cases before them on appeal unless modified or changed by the President. The President, upon appeal or upon his own motion, shall have power to determine all claims or questions with respect to inclusion for, or exemption or deferment from training and service under this title, and the determination of the President shall be final. * * *" In Estep v. United States, supra [327 U.S. 114, 66 S.Ct. 427], the Supreme Court construed the word "final," as used in this connection, to mean "that Congress chose not to

give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous. The question of jurisdiction of the local board is reached only if there is no basis in fact for the classification which it gave the registrant." It is in the light of this ruling that we must examine the record. If, therefore, there is no basis in fact to support the classification of I-A which the National Selective Service Appeal Board finally gave appellant, jurisdiction was lacking and its order of classification was a nullity.

Section 6(j) of Title I of the Selective Service Act of 1948 [4] provides:

"Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code."

■ The burden was on appellant to show clearly that he was within the exemption which he claimed, but no more than that. United States v. Bender, 3 Cir., 206 F.2d 247. The undisputed evidence shows that appellant is a bona fide member of the religious sect known as Jehovah's Witnesses and that he is "by

reason of religious training and belief, * * * conscientiously opposed to participation in war in any form", and that he has conscientious objections which are based on his "belief in a relation to a Supreme Being involving duties superior to those arising from any human relation". This evidence stands unimpeached and uncontradicted on the record. The memorandum of the hearing held by the local board on January 9, 1951, stated that appellant was a member of Jehovah's Witnesses and concluded that he was "Conscientiously opposed to war as a matter of belief." The hearing officer found, as stated in his report of June 13, 1951, that appellant's religious beliefs as a conscientious objector were based on the teachings of Jehovah's Witnesses and his own studies of the Bible, and that appellant had been regularly attending meetings of Jehovah's Witnesses and participating in Bible study. At the trial, Edith Dodge, then Co-ordinator of Selective Service Boards in Erie County, who was called as a witness by the Government, testified on direct examination that "we do not know what National Headquarters had in mind when they put him in I-A." Indeed, during the course of the trial, the Government conceded that "Nobody is questioning the fact of [appellant] being a Jehovah Witness"; and in its brief submitted to us for consideration in the case at bar, the Government stated that "The Presidential Appeal Board" had adequate basis in fact for classifying appellant I-A "without doubting his good faith or religious belief." The record is barren of evidence of a single fact which would tend to show that appellant was not a member in good faith of the religious sect known as Jehovah's Witnesses with sincere religious convictions against participation in war.

The Government argues, however, that there is adequate basis in fact in the

**4.** As amended by Section 1(q) of Title I of the Universal Military Training and Service Act of June 19, 1951, 65 Stat. 75, 86; 50 U.S.C.A.Appendix § 456(j).

Section 6(j) of the Act of 1948 as presently constituted differs from the original provision in respects that are not here material.

record for the I-A classification which was finally given appellant by reason of:

(1) In answer to question 5 of SSS Form No. 150, "Under what circumstances, if any, do you believe in the use of force," appellant replied "In the protection of my family and Christian Brethren and when my Christian ministry is in jeopardy. Nehemiah 4:14."

(2) Certain statements in two articles, entitled "Why Jehovah's Witnesses Are Not Pacifists" and "Pacifism and Conscientious Objection—Is there a Difference?", both of which appeared in the February 1, 1951, issue of "The Watchtower" publication, and which show that Jehovah's Witnesses are not pacifists but believe in and approve of ecclesiastical or theocratic wars as described in the Bible, according to the interpretation given by Jehovah's Witnesses.[5] Do these facts afford the board a reasonable basis for reaching the conclusion that appellant was not "opposed to participation in war in any form" and denying him the status of a conscientious objector?

Appellant's statement that he believed in the use of force to protect his family, his Christian brothers and his ministry appears to us to be no negation of his evidence that he was a bona fide member of Jehovah's Witnesses conscientiously opposed by reason of religious training and belief to participation in war in any form. In Taffs v. United States, 8 Cir., 1953, 208 F.2d 329, 330, the Court, passing upon this same question, held that "Appellant's testimony that he would use force in defense of his life, property, or fellow Jehovah Witnesses" would not support a denial of his claim for the status of conscientious objector, where other evidence of his opposition to par-

ticipation in war by reason of religious training and belief was undisputed in the record. We agree with this view. See also United States v. Pekarski, 2 Cir., 1953, 207 F.2d 930; Annett v. United States, 10 Cir., 1953, 205 F.2d 689.

Moreover, the reference in appellant's answer to Chapter IV, verse 14 of the Book of Nehemiah provides a significant gloss and it indicates quite clearly that appellant is referring to the use of force only on the command and at the direction of God. All that Nehemiah said and did in the restoration of the walls of Jerusalem and the reestablishment of civil authority was as the emissary of God. The views here expressed by appellant are entirely consistent with his whole position as a conscientious objector.

■■■■ The Government would have us construe the words "war in any form" to include the theocratic warfare discussed in the two articles appearing in the February 1, 1951, issue of "The Watchtower," the argument being that since appellant believed in and approved of theocratic warfare, he was not opposed to "participation in war in any form." However, we do not believe that Congress intended such an unreasonable construction to be placed on this phrase. War, as the word is commonly understood, is a contest by force between two or more nations; it is the state or fact of one politically organized body exerting violence or force against another for the purpose of overcoming or overthrowing it. It is clear to us that Congress was legislating in regard to this type of conflict, and was not concerned with Scriptural or theocratic wars, considered as carried on by the command and direc-

---

5. After his original classification in Class I-A-O by the local board, appellant wrote to the local board and forwarded to it a copy of "The Watchtower" publication mentioned above, requesting in his letter that it be added to his file as "some additional information." Appellant had earlier stated in the "Special Form for Conscientious Objector" that the Watchtower publications were one of the sources from which he had received his religious training and belief. The local board properly received the February 1, 1951, issue of "The Watchtower" and made it a part of the file to be considered in support of appellant's religious beliefs.

tion of God. The phrase "in any form" obviously modifies not the word "war" but the word "participation." Taffs v. United States, supra. War, generally speaking, has only one form, namely, a struggle between opposing forces; whereas a person's participation therein may be in a variety of forms. We are convinced that Congress intended by this section to exempt from service in the armed forces those persons who were conscientiously opposed by reason of religious training and belief to any form of participation in a flesh-and-blood war between political entities.

There is nothing whatever in this record to support the contention that appellant may conscientiously, at his own free choice and election, participate in any sort of war, to the extent that he wishes to do so. Had there been a finding, or any evidence to show, that his stated beliefs were mere sham and pretense, we should have a quite different case before us.

A careful examination of the record compels us to conclude that the National Selective Service Appeal Board had no evidence before it to support the classification of appellant in Class I-A. Since there is no basis in fact for the I-A classification which was finally given appellant, the order to report for induction was a nullity. The order to report for induction being a nullity, appellant was guilty of no offense in refusing to submit to induction. In our view, the denial to appellant of the status of a conscientious objector was so arbitrary and capricious that the trial judge should have so held as a matter of law and granted appellant's motion for a judgment of acquittal. It is not necessary for us separately to inquire whether there is adequate basis in fact to support the denial of appellant's claim for exemption as a duly ordained minister, as this question is not before us in this case.

The judgment of the trial court is reversed and the cause is remanded with directions to dismiss.