## JESSEN v. UNITED STATES.
### No. 4775.

United States Court of Appeals
Tenth Circuit.
May 7, 1954.

Hayden C. Covington, Brooklyn, N. Y. (Robert L. McDougal and Rollie R. Rogers, Denver, Colo., were with him on the briefs), for appellant.

Robert D. Inman, Asst. U. S. Atty., Boulder, Colo. (Donald E. Kelley, U. S. Atty., Denver, Colo., was with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

PHILLIPS, Chief Judge.

Jessen was charged by information with the violation of 50 U.S.C.A.Appendix, § 462(a) in that he refused to submit himself to induction into the armed forces of the United States. He was convicted and sentenced and has appealed.

Jessen was born on June 26, 1929. He registered with Local Board No. 1, Denver, Colorado. He returned his questionnaire, in which he stated that he had attended elementary school, junior high school, and had graduated from high school and that he was then a full time student at the University of Natural Healing Arts in Denver, Colorado. He signed Series XIV of the questionnaire, certifying that by reason of religious training and belief he was conscientiously opposed to participation in war in any form. The Local Board mailed him Conscientious Objector Form No. 33R–115. He signed Series I(B) of the form, in which he certified that by reason of his religious training and belief he was conscientiously opposed to participation in war in any form and was conscientiously opposed to participation in noncombatant training or service in the armed forces. In such form he stated that he believed in a Supreme Being; that his obligations to God were

superior to any obligation arising from any human relation; that Jehovah is the Supreme Being; that when there is a conflict between the law of a nation and the law of God, the latter is supreme and a Christian must obey it; and that the commandment "Thou shalt not kill" required him to remain strictly neutral in worldly altercations. Jessen further stated in such form that he obtained his religious training and beliefs from his parents, who had brought him up as a Jehovah's Witness; that he had studied the Bible and Watchtower Bible and Tract Society publications; that he believed in the use of force only for the purpose of self-defense; that his parents were Jehovah's Witnesses; and that he had been a member of that sect since childhood. He gave the name and address of his church, the name of his minister, the name and address of the person on whom he most relied for religious guidance, and a number of persons as references. He also made a lengthy statement with respect to the attitude of Jehovah's Witnesses toward participation in war. He indicated his belief that the theocratic wars described in the Old Testament were justified because they were entered into at the command of God; and stated that Jehovah's Witnesses were not pacifists and that they believed in participation in war at the command of Jehovah, but were opposed to all other wars. He also referred to the war prophesied in Revelations, Ch. 19, commonly known as Armageddon, and indicated that it would be a war commanded by God.

The Local Board classified him as 1–A and notified him of such classification on February 28, 1949. On December 30, 1949, he was placed by the Local Board in Class I–A–O. He was ordered to report for a pre-induction physical examination and was notified of his physical acceptability.

On January 23, 1951, the Local Board ordered him to report for induction on February 5, 1951. On February 5, 1951, the State Director wrote a letter to the Local Board suggesting that the induc-tion be postponed. The Local Board postponed the induction on February 5, 1951, and on that date notified Jessen of such postponement. On March 9, 1951, Jessen filed four affidavits from residents of Denver, which averred facts supporting Jessen's claim as a conscientious objector. Induction was again postponed to June 15, 1951.

On September 14, 1951, the State Director ordered the Local Board to reopen Jessen's classification and to cancel an outstanding induction order.

On October 25, 1951, the Local Board reclassified Jessen as Class 1–A–O. On October 26, 1951, the Local Board ordered Jessen to report immediately for induction. On October 31, 1951, Jessen wrote a letter to the Local Board, the material portions of which read as follows:

"I have recently received a re-classification of 1–A–O which I wish to appeal. * * *

"Should there be any questions regarding my work or objections, I would appreciate a personal interview to clarify the situation."

The Local Board did not grant a personal appearance and sent the file to the Appeal Board and ordered Jessen to take a pre-induction physical examination. On November 9, 1951, Jessen was notified of his physical acceptability.

On December 6, 1951, the Appeal Board made a preliminary determination that Jessen should not be classified either as 1–A–O or 1–O.

In accordance with the regulations, the matter was then referred to the Department of Justice for appropriate inquiry and hearing on his claim as a conscientious objector and the file was sent to the Department of Justice. An investigation was made by the Federal Bureau of Investigation and its report, together with the file, was referred to the Hearing Officer of the Department of Justice. On December 18, 1952, Jessen was notified to appear before the Hearing Officer. Jessen appeared. The Hearing Officer made a report in which

he reviewed the history of the case with the Local Board and stated:

"After reading the file carefully, and having talked to registrant and considered the additional evidence offered by the registrant, it is my conclusion that the registrant is sincere, and that he is now and has for many years past been a conscientious objector. After considering all of the facts, it is my conclusion that the registrant should be classified 1–O. * * *

"I think it would have been more difficult for the court to find the act of the Board was without any basis in fact if the Board has classified this man as 1–A rather than 1–A–O. They accepted the defendant's professions of sincere and conscientious objections on the religious grounds as being truthful, but they attempted, and in my opinion without any basis in fact, to assert that while he was sincere and conscientious, that sincerity and conscientiousness extended only to his active aggressive participation in military service and that he was not sincere in his statements that he was opposed to war and participation in war in all its forms."

The Department of Justice, acting through an Assistant Attorney General, T. Oscar Smith, wrote a letter to the State Board, recommending that the claim of Jessen for classification as a conscientious objector be denied. The Assistant Attorney General stated that Jessen believed in the use of force for the protection of other Jehovah's Witnesses, justified some of the wars of the Old Testament, and stated that he believed in participation in war at the command of Jehovah. The Assistant Attorney General further stated that Jessen was a Jehovah's Witness and was a sincere believer in its tenets, but that the teachings of the sect and the beliefs expressed by the registrant did not include opposition to participation in war in any form.

The Appeal Board, on March 5, 1953, classified Jessen in Class 1–A. It returned the file to the Local Board on March 10, 1953. The Local Board notified Jessen of the 1–A classification by the Appeal Board. Following a physical examination and a notification of acceptability, the Local Board mailed a notice to Jessen to report for induction on May 25, 1953. Jessen reported, but refused to submit to induction.

To be entitled to classification in 1–O under § 6(j) of the Universal Military Training and Service Act, 62 Stat. 604, 612, 50 U.S.C.A.Appendix, § 456(j), the registrant must, "by reason of religious training and belief," be conscientiously "opposed to participation in war in any form."

We disagree with the construction placed on the last quoted phrase by the Assistant Attorney General.

█ A registrant's belief in the use of force in self-defense is not inconsistent with a conscientious opposition to participation in war in any form.[1]

█ We are of the opinion that Congress, in using the phrase "war in any form", did not intend to embrace therein theocratic wars. Rather, we think, Congress had in mind secular wars between nations, made and directed by man. This conclusion is supported by the adjudicated cases.[2]

The remaining question is whether there was any basis in fact for the classification made by the State Appeal Board.[3]

1. Annett v. United States, 10 Cir., 205 F. 2d 689, 691; United States v. Pekarski, 2 Cir., 207 F.2d 930, 931; Taffs v. United States, 8 Cir., 208 F.2d 329, 331, certiorari denied 347 U.S. 928, 74 S.Ct. 532; United States v. Hartman, 2 Cir., 209 F. 2d 366, 370.

2. Taffs v. United States, 8 Cir., 208 F.2d 329, 331, certiorari denied 347 U.S. 928, 74 S.Ct. 532; United States v. Hartman, 2 Cir., 209 F.2d 366, 370.

3. Estep v. United States, 327 U.S. 114, 122, 66 S.Ct. 423, 90 L.Ed. 567.

In Dickinson v. United States, 346 U. S. 389, 396, 397, 74 S.Ct. 152, 157, the court said:

"The court below in affirming the conviction apparently thought the local board was free to disbelieve Dickinson's testimonial and documentary evidence even in the absence of any impeaching or contradictory evidence. * * * However, Dickinson's claims were not disputed by any evidence presented to the selective service authorities, nor was any cited by the Court of Appeals. The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities. We have found none here.

"Local boards are not courts of law and are not bound by traditional rules of evidence; they are given great leeway in hearing and considering a variety of material as evidence. If the facts are disputed the board bears the ultimate responsibility for resolving the conflict—the courts will not interfere. Nor will the courts apply a test of 'substantial evidence.' However, the courts may properly insist that there be some proof that is incompatible with the registrant's proof of exemption. The local board may question a registrant under oath, subpoena witnesses to testify, and require both registrant and witnesses to produce documents. 32 C.F.R. § 1621.15. The board is authorized to obtain information from local, state, and national welfare and governmental agencies. 32 C.F.R. § 1621.14. The registrant's admissions, testimony of other witnesses, frequently unsolicited evidence from a registrant's neighbors, or information obtained from other agencies may produce

dissidence which the boards are free to resolve. Absent such admissions or other evidence, the local boards may call on the investigative agencies of the federal government, as they would if a registrant were suspected of perjury. But when the uncontroverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice."

■ Here, the uncontroverted evidence supported the registrant's claim that he was opposed to participation in war in any form. There was a complete absence of any impeaching or contradictory evidence. It follows that the classification made by the State Appeal Board was a nullity and that Jessen violated no law in refusing to submit to induction.[4]

Reversed and remanded, with instructions to dismiss the information.

4. United States v. Hartman, 2 Cir., 209 F. 2d 366, 370; Taffs v. United States, 8 Cir., 208 F.2d 329, 331, certiorari denied 347 U.S. 928, 74 S.Ct. 532; Weaver v. United States, 8 Cir., 210 F.2d 815, 822; Pine v. United States, 4 Cir., 212 F.2d 93; Annett v. United States, 10 Cir., 205 F.2d 689, 690, 691.