## UNITED STATES v. CLOSE.
### No. 11085.

United States Court of Appeals
Seventh Circuit.
June 10, 1954.

Rehearing Denied Sept. 28, 1954.

Hayden C. Covington, Brooklyn, N. Y., Victor F. Schmidt, Columbus, Ohio, for appellant.

Jack C. Brown, U. S. Atty., Indianapolis, Ind., Stephen Leonard, Asst. U. S. Atty., Anderson, Ind., William H. Sparrenberger, Asst. U. S. Atty., Robert J.

Wilson, Asst. U. S. Atty., Indianapolis, Ind., for appellee.

Before MAJOR, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

The defendant, Ernest F. Close, was convicted of violating the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 451 et seq., by refusing to submit to induction into the armed services of the United States. In this appeal the defendant contends that his final classification of I-A (available for military training and service), under which he was ordered to submit to induction, was invalid and that, therefore, his refusal to submit to induction was not a violation of 50 U.S.C.A.Appendix, § 456. The defendant's classification questionnaire showed that he was a Purdue University student studying electrical engineering, that he was a conscientious objector and that he had asked to be so classified.

On November 15, 1949, the defendant, by mail, filed with the local board the regular Selective Service System Form 150 in which he stated that he was, because of his religious training and belief, conscientiously opposed to war in any form; that he was also opposed to participation in noncombatant training and service in the armed forces; and that his belief in a Supreme Being involved duties which to him were superior to any duties arising from any human relation. In this statement the defendant cited and quoted various passages from the Bible on which he relied for support of his position. He explained that he had received his religious training by reading and studying the Bible and by using the Bible helps published by the Watchtower Bible and Tract Society, and from attending meetings of Jehovah's Witnesses for about ten years. In this same form the defendant stated that he considered that his work for Jehovah's Witnesses had demonstrated his religious convictions; gave a list of the names and addresses of individuals who could supply information as to the sincerity of his religious convictions; stated that his mother was a member of Jehovah's Witnesses; and gave his reasons for never having theretofore publicly expressed his views as to participation in war in any form. On the same day that the local board received this Form No. 150 from the defendant it classified him as I-A. The registrant, by letter, remonstrated against this classification and requested an interview with the local board.

In April 1950 the local board changed the defendant's classification to I-A-O (available for noncombatant military service only), thereby indicating the belief of the local board in the sincerity of his claim to exemption from combatant service. Defendant, by letter, complained of this classification and again explained to the board that he was "conscientiously opposed to participation in war or in any phase of military service." In this letter he also requested a personal appearance before the board. The local board considered this to be a request for an appeal and accordingly forwarded the defendant's file to the appeal board. The appeal board, after having made a preliminary determination that the defendant was not entitled to a conscientious objector classification, referred the case to the Department of Justice for inquiry and hearing.

On March 27, 1951, the defendant appeared before the designated hearing officer, explained his beliefs and the reasons therefor and submitted affidavits in support of his claim. After consideration of the case the hearing officer concluded and recommended: "It is my opinion that Registrant is at least one Jehovah's Witness who has sincerely practiced his religion for years and is entitled to a classification of I-O [conscientiously opposed to participation in military service, combatant or non-combatant]."

Thereafter, however, on July 23, 1952, T. Oscar Smith, Special Assistant to the Attorney General, directed a letter to the appeal board in which he stated: " * * * Conceding that the registrant

bases his claim upon religious grounds, he is, nevertheless, not entitled to exemption as a conscientious objector because those grounds do not include opposition to war in any form. On the contrary, the article, 'Why Jehovah's Witnesses Are Not Pacifists,' The Watchtower, February 1, 1951, which was offered in evidence by the registrant as explanatory of his beliefs, clearly shows that the sect does not teach opposition to all forms of war. * * * Since the registrant has failed to establish his entitlement to the exemption within the meaning of section 6(j), Universal Military Training and Service Act, it is recommended that the claim be denied."

Pursuant to the recommendation of the Assistant Attorney General, the appeal board denied the defendant's claim to classification as a conscientious objector and again placed him in class I-A. His file was then returned to the local board on August 11, 1952, and the defendant was notified of the classification. On receipt of this notice the defendant wrote a letter to the local board requesting that his classification be reopened and that a IV-D (ministerial) classification be given to him because he had then become a student preparing for the ministry. The local board refused to reopen his classification and ordered the defendant to report for induction December 26, 1952.

A review of the defendant's file by state headquarters revealed that the local board had failed to grant the defendant a personal appearance, as he had requested, and the local board was then ordered to reopen the classification. When notified of this hearing before the local board the defendant wrote a letter to the board stating that in the meantime he had become an ordained minister and his letter was accompanied by various certificates and affidavits signed by several persons. The defendant appeared before the local board in person on November 25, 1952. At that time he stated that he wanted to present new evidence concerning his having become an ordained minister. Defendant presented extensive documentary evidence to the board but the board made an entry on his file, "I-A Affirmed." Defendant appealed from this classification on the ground that he was a minister. The appeal board again classified him I-A and returned his file to the local board.

Pursuant to the order of the local board, the defendant, on March 18, 1953, appeared at the induction center but refused to be inducted.

In this case there was no affirmative evidence before the local board to contradict the evidence furnished by the defendant as to the sincerity of his beliefs as a conscientious objector unless the F. B. I. report may be considered as such evidence. In Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, the Supreme Court held that the local board was not free to disbelieve a registrant's testimonial and documentary evidence as to his sincerity in the absence of any impeaching or contradictory evidence. The court there said, 346 U.S. page 397, 74 S.Ct. at page 158, "But when the uncontroverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice."

Nor do we believe that the F. B. I. report on this defendant furnished an evidentiary basis for the denial of the exemption claimed by the defendant. The F. B. I. report described interviews with various persons whose views varied as to the sincerity of the defendant's claim for exemption as a conscientious objector. But the reasons for the opinions expressed in the interviews were not shown. As the court said of such unsupported opinions in Annett v. United States, 10 Cir., 205 F.2d 689, 691: "To merely state that he does not consider him sincere without giving a single fact upon which such belief is predicated does not rise to the dignity of evidence." In this case the Government stresses the fact that the defendant had not given

**442**

public expression to the beliefs on which he based his claim to exemption. That fact was also present in Weaver v. United States, 8 Cir., 210 F.2d 815, 819, but the court there apparently did not consider it important.

■ Nor do we find merit in the contention that the defendant abandoned his claim to conscientious objector status by appealing only on the denial to classification as a minister. As the court said in Pine v. United States, 4 Cir., 212 F.2d 93, 98, "It is absurd to assume that appellant intended to abandon his claim to exemption as a conscientious objector because he sought by his appeal the more complete exemption allowed ministers of religion * * *." Memorandum No. 41, issued November 30, 1951, by the Selective Service System Headquarters, as amended August 15, 1952, expressly provides that an appeal by a registrant solely on the basis that he is entitled to ministerial status does not constitute withdrawal of his claim as a conscientious objector. Jewell v. United States, 6 Cir., 208 F.2d 770, 771.

A consideration of the entire Selective Service file in this defendant's case convinces us that his final classification of I-A, under which he was ordered to submit to induction, may be attributed solely to the written opinion submitted to the appeal board by the Department of Justice.

There was a personal appearance by the defendant on his appeal only before the hearing officer of the appeal board. It was this hearing officer who, after reviewing the defendant's file and after talking to the defendant, thought that the defendant was sincere in the beliefs on which he based his claim to a conscientious objector classification. The hearing officer, therefore, recommended that the defendant be so classified. If the appeal board had followed the recommendation of the hearing officer, the defendant would have been classified I-O and would not have been subject to induction. Instead, the appeal board followed the "advisory" recommendation of the Department of Justice and classified the defendant as I-A.

■ It is clear from the letter written by the Special Assistant of the Attorney General to the appeal board that his legal opinion that the defendant was not entitled to a conscientious objector classification was based on the belief that the defendant, as a member of Jehovah's Witnesses, was not a pacifist, was not opposed to participation in theocratic wars, and was not opposed to fighting in self-defense and, therefore, was not "opposed to participation in war in any form", as that phrase is used in Section 6(j) of the Act. Many recent decisions have held that such an interpretation of this section of the Act is erroneous. Annett v. United States, 10 Cir., 205 F.2d 689; United States v. Pekarski, 2 Cir., 207 F.2d 930; Taffs v. United States, 8 Cir., 208 F.2d 329; United States v. Hartman, 2 Cir., 209 F.2d 366, 370; Jessen v. United States, 10 Cir., 212 F.2d 897; United States v. Hagaman, 3 Cir., 213 F.2d 86. As to this contention, the court said in the Taffs case, 208 F.2d at page 331: "However, we are inclined to think that Congress did not intend such an unreasonable construction to be placed on this phrase. War, as we know it, and as the term is ordinarily used, means a flesh and blood conflict between nations; it is a struggle of violence by one political entity seeking to overcome or overthrow another political entity. Manifestly, Congress was legislating in regard to this type of conflict and was not, indeed, could not, concern itself with theocratic wars—that is, wars carried on by the immediate direction of God. The words, 'in any form', obviously relate, not to 'war' but to 'participation in' war. * * *"

■ Since the final I-A classification of the defendant was based on this erroneous construction of the statute, the classification was invalid and did not require the defendant to submit to induc-

tion. The defendant's motion for acquittal should have been granted.

The judgment of the District Court is reversed and the cause is remanded with instructions to dismiss the indictment.