**UNITED STATES of America**

v.

**Gerald Lee BROWN, Appellant.**

**No. 17918.**

United States Court of Appeals, Third Circuit.

Argued Jan. 6, 1970.

Decided March 11, 1970.

Rehearing Denied May 5, 1970.

Charles M. Butterworth, Philadelphia, Pa., for appellant.

Charles B. Burr, II, Asst. U. S. Atty., Philadelphia, Pa. (Louis C. Bechtle, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, ALDISERT and STAHL,[1] Circuit Judges.

## OPINION OF THE COURT

ALDISERT, Circuit Judge.

This appeal from a judgment of conviction for refusal to submit to induction into the armed services requires us to decide if appellant was denied basic fairness in the selective service procedures which resulted in rejection of his claims for exemption. Appellant's primary contention is that a Department of Justice recommendation to the appeal board was based in part on a legally erroneous conclusion. Alternatively, he argues that the selective service system denied him due process on the local board and appeal board levels.

Brown, a member of the Jehovah's Witnesses religious sect, requested classification as a conscientious objector (I-O) or minister (IV-D).[2] His local Philadelphia board granted him a personal appearance, denied these requests, and classified him I-A in August, 1964. In October he addressed a letter to the "Board of Appeal," and in addition to requesting a reconsideration of his case on the basis of "new evidence strengthening the force of my conviction with the ministry," stated: "[A]pproximately a year or more ago I voluntarily summited [sic] to a military examination for the purpose of induction into the Armed Forces of the United States. This effort was reversed as my present goal came clearer into focus. My physical disabilities (poor vision) at the time of the examination are currently on record." In December his file was sent by the local board to the appeal board; five days later it was dispatched to the Department of Justice for a recommendation. More than a year later, in March, 1966, appellant appeared before a department hearing officer where he testified personally and was afforded

1. Judge Stahl participated in the hearing and decision of this case but died before the opinion of the court was filed.

2. Responding to question 2, Conscientious Objector Form 150, "Describe the nature of your belief which is the basis of your claim made . . . ., and state whether or not your belief in a Supreme Being involves duties which to you are superior to those arising from any human relation," appellant declared:

To whom it may concern:

It is my concept that serving Jehovah God, that is, employing the many principles found in his word the bible, is the highest form of service humans can perform to show there [sic] Love to him. Such high principles not only benefit one-self morally but teach one the need of justice, equality and peace none of which would be possible without the love of God. It is the creator's purpose to bring righteousness to this earth thru his Kingdom by means of his son Christ Jesus. Since my Con-

victions are largely grounded on this bible hope of a new order of things under God, the bible requirements of obedience to God to attain such blessings is manditory [sic]. It is my belief theirfore [sic] that I have a greater responsibility to fulfill, that is the devine [sic] charge laid down in the bible. Since I am determined as well as convinced that this is a life vocation and this is what I desire more than anything else, of necessity then obedience to God first supercedes all other subornate [sic] liabilities that infringe, deter, or obstruct the fulfillment of my personal goals.

1.—Acts 5:28, 29

In answer to question 5, "under what circumstances, if any, do you believe in the use of force?" he stated: "As a Christian it is manditory [sic] to obey God and show love to our neighbors. This peace loving attitude makes for unison, eliminating force."

the opportunity of presenting evidence in his behalf.

Seven months later the Department of Justice returned the file to the appeal board, stating "that the registrant has failed to sustain his burden of proving his conscientious objector claim and recommending * * * that the claim be not sustained and that he not be classified in Class I-O or in Class I-A-O." Upon being advised of this recommendation, appellant replied to the Department of Justice requesting "a further opportunity be given me to present the facts and further information in support of my claim as a minister of Jehovah God," and also forwarded to the appeals board a written statement of accelerated religious activities. On November 8, 1966, the appeal board considered his case and classified him I-A.

On April 3, 1967, appellant reported for, but refused, induction. His indictment, trial, conviction, and sentencing followed.

Appellant relies heavily on what has become known as a *Sicurella* [3] argument: Where two legal grounds for classification—one correct and one incorrect—are recommended by the Department of Justice and it is impossible to determine which was relied upon by the selective service system, the courts may not assume that the correct ground was the basis for the classification. Accordingly, the classification is invalid and a subsequent conviction for refusal to submit to induction cannot stand.

▆▆▆ In urging the application of this doctrine, appellant points to one sentence in the Justice Department's letter of recommendation: "The hearing officer reported that the registrant was emphatic in stating that his religion was not pacifist in nature and would battle evil and wrongdoing in its own way by strong opposition and a militant stand." From this single sentence, appellant would have us conclude that the Department of Justice based its recommendation in part on an erroneous determination that he was not a bona fide conscientious objector because he was willing to do battle in a spiritual, as distinguished from a temporal, war. He asserts that this was an invalid ground for denying the conscientious objector claim because it is now well settled that the teaching of the Jehovah's Witnesses on Armegeddon and spiritual warfare is not a legitimate reason for refusal of a I-O classification. We agree with this statement of the law.[4] We disagree, however, that it is applicable to the case at bar.

Appellant has confused the restatement of his own testimony regarding his church's "militant stand" with a statement of the reasons given by the hearing officer in recommending a denial of his claim. The hearing officer reported that Brown "did not state that he personally was opposed to military service because of a strong personal conviction." The report discloses that "[t]he Hearing Officer endeavored to ascertain whether the registrant's objections to military service were predicated on personal religious beliefs and convictions, and * * * that the registrant's responses seemed to be solely directed to the work done by the Jehovah's Witnesses and the amount of training involved," that appellant "made no statement at any time that his objection to military service was based upon personal religious belief," but that "the registrant's conscientious objector claim appeared to be based solely upon the opposition of the Jehovah's Witnesses to military service and the registrant's

3. Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955).

4. Sicurella v. United States, *supra*; United States v. Carroll, 398 F.2d 651 (3 Cir. 1968); United States v. Hagaman, 213 F.2d 86, 89 (3 Cir. 1954); Kretchet v. United States, 284 F.2d 561 (9 Cir. 1960); United States v. Hartman, 209 F.2d 366 (2 Cir. 1954); Jessen v. United States, 212 F.2d 897 (10 Cir. 1954); Taffs v. United States, 208 F.2d 329 (8 Cir. 1953), *cert. denied*, 347 U.S. 928, 74 S.Ct. 532, 98 L.Ed. 1081 (1954).

status as a minister of Jehovah's Witnesses." [5]

A fair reading of the Department of Justice report compels the conclusion that the recommendation was not based on a finding of the registrant's readiness to do spiritual combat, but on a determination that he failed to meet his burden of proving the existence of personal convictions opposing temporal combatant service as distinguished from mere membership in a religious organization which espouses non-combatant beliefs. We reject, therefore, appellant's initial contention that the Department of Justice recommendation was based in part on a ground erroneous in law.

A conscientious objector exemption must be based upon "subjective religious beliefs of the particular individual, not upon the religious tenets of an organization of which he is a member." [6] Moreover, the burden of establishing entitlement to a conscientious objector classification is upon the registrant.[7]

Appellant makes no challenge to this statement of his responsibility to prove his subjective and personal beliefs. His argument, simply stated, is that he discharged that responsibility by meeting the burden of proof. Ours then is a very narrow inquiry: Did he meet that burden, or conversely stated, was there

5. The report of the Department of Justice stated:

> The Hearing Officer questioned the registrant as to the religious basis of his conscientious-objector claim and reported that the registrant expressed opposition to military service because it is opposed to the beliefs of his church and because the Jehovah's Witnesses do not approve of it, but that the registrant did not state that he personally was opposed to military service because of a strong personal conviction. The Hearing Officer reported that the regisstant [sic] was emphatic in stating that his religion was not pacifist in nature and would battle evil and wrongdoing in its own way by strong opposition and a militant stand. On several occasions the Hearing Officer endeavored to ascertain whether the registrant's objections to military service were predicated on personal religious beliefs and convictions, and reported that the registrant's responses seemed to be solely directed to the work done by the Jehovah's Witnesses and the amount of training involved; that the registrant emphasized the door-to-door publishing and his regular attendance at Jehovah's Witnesses meetings. The Hearing Officer reported that the registrant made no statement at any time that his objection to military service was based upon personal religious belief; that the registrant's conscientious-objector claim appeared to be based solely upon the opposition of the Jehovah's Witnesses to military service and the registrant's status as a minister of Jehovah's Witnesses. The Hearing Officer reported that the registrant's witnesses stated that the registrant was diligent in his

> dedication to his religious activity and that the resume indicated that the registrant lived quitely [sic] and is of good character. The Hearing Officer found that there was a complete absence of any satisfactory evidence that the registrant held any status other than that of a minister of his church and that the registrant's claim of conscientious objection is unsupported. He recommended that the conscientious-objector claim of the registrant be not sustained.
>
> \*    \*    \*    \*    \*
>
> The Department of Justice concludes that the registrant has failed to sustain his burden of proving his conscientious-objector claim and recommends to your Board that the claim be not sustained and that he be not classified in Class I–O or in Class I–A–O.

6. Keefer v. United States, 313 F.2d 773, 776–777 (9 Cir. 1963) (footnote omitted). It is not enough that "he produces certain objective matter—such as membership in a religious sect which advocates pacifism." Olguin v. United States, 392 F.2d 329, 331 (10 Cir. 1968).

7. United States v. Carroll, *supra*, 398 F.2d at 653; Swaczyk v. United States, 156 F.2d 17, 19 (1 Cir.), *cert. denied*, 329 U.S. 726, 67 S.Ct. 77, 91 L.Ed. 629 (1946); "It should be remembered that immunity from military service arises not as a matter of constitutional grant, but by virtue of Congressional deference to conscientious religious views. Rase v. United States, 6 Cir., 129 F.2d 204. The burden, therefore, is not upon the government, but upon one claiming exemption to bring himself clearly within the excepted class. Seele v. United States, 8 Cir., 133 F.2d 1015, at page 1022."

any basis in fact for the board's classification of I-A in view of the evidence that the appellant was a sincere adherent to his particular religious faith?[8]

Brown contends that his replies to questions in Form 150, see Note 2, *supra,* constitute sufficient evidence of his personal and subjective conscientious objector belief. An examination of these passages, however, fails to reveal an expression of "subjective religious beliefs of the particular individual." One passage is nothing more than a declaration of a sincere willingness to obey and serve "Jehovah God" and to make this a life's vocation; the other, a response to the question asking under what circumstances, if any, is there belief in the use of force, is but a laudatory paraphrase of the Commandment "Love Thy Neighbor" which the appellant has described as a "peace loving attitude [making] for unison, eliminating force." Nowhere does he declare, forthrightly or indirectly that he personally does not believe in temporal warfare because of his "religious training and belief."[9] To these inadequate responses to Form 150's critical questions must be added the gist of his testimony before the Department of Justice where the hearing officer reported that the appellant "made no statement at any time" that his objection to military service was based on a personal religious belief. It cannot be said that the crucial issue on personal belief was established. Not having met the burden of proving a right to exemption, appellant cannot support the contention that there was no basis in fact for the board's classification.

He does argue, however, that he met the burden of establishing a prima facie case by showing (1) he was a sincere, practicing adherent of the Jehovah's Witnesses and (2) an absence of any evidence tending to impeach or contradict this representation. Accordingly, he says that "when the uncontradicted evidence supporting a registrant's claim places him prima facie within the statutory exception, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice." Dickinson v. United States, 346 U.S. 389, 397, 74 S.Ct. 152, 158, 98 L.Ed. 132 (1953).

Appellant's reliance on *Dickinson* is misplaced. First, that case involved a claim for a IV-D ministerial exemption. A comparison of facts relating to service as a minister can be of little aid in Brown's conscientious objector claim, the basic deficiency of which, as we have just observed, stemmed from his failure to establish the presence of personal convictions. With respect to Brown's ministry claim, we observe initially that although the Court found that Dickinson had satisfied the burden, it nevertheless declared: "[S]ince the ministerila exemption is a matter of legislative grace, the selective service registrant bears the burden of clearly establishing a right to the exemption", citing 32 C.F.R. § 1622.1(c). *Id.* at 395, 74 S.Ct. at 157. The registrant's evidence in that case overwhelmingly established an entitlement to a IV-D classification. He showed that he voluntarily left his 40-hour a week job and proceeded to dedicate 150 hours a month to his ministerial duties and limit his radio repair work to 5 hours a month. There was no refutation of this testimony and, standing alone, it was deemed sufficient by the Court to meet the burden of establishing the right to a ministerial exemption. Such facts must be contrasted

---

8. "It is by now axiomatic in Selective Service cases that the standard of judicial review of classifications by a local board is whether there is basis in fact for the board's classification." (citations omitted) United States v. Carroll, *supra,* 398 F.2d at 653.

9. Military Selective Service Act of 1967, 50 U.S.C.A.App. § 456(j), "Nothing contained in this title shall be construed to require any person to combatant training and service in the Armed Forces of the United States, who by reason of religious training and belief, is conscientiously opposed to participation in war in any form."

with those contained here, where appellant, even at the peak of his increased religious activities in the autumn of 1966, was committing an average of only 71 hours per month to his church. At the same time, he was continuing full time secular employment. Under these circumstances we cannot say that the board erred in concluding he had failed to present a prima facie case for either the conscientious objector or the ministerial exemption.[10]

■ Appellant also suggests that he was precluded from establishing a prima facie ministerial IV-D classification because the evidence of his accelerated religious activities, communicated by him to the appeal board in 1966 through a letter submitted at the Justice Department hearing and a subsequent reply to the Justice's recommendation, should have been referred to the local board. He asserts that such failure amounted to a deprivation of due process and argues that,

by virtue of regulation § 1626.24(b), the appeal board had no authority to receive or consider any information other than that contained in the record received from the local board.

The answer to this argument is found in the regulations which were in effect in 1964–66, at the time of the processing of Brown's case. Until July, 1967, 32 C.F.R. § 1626.25 specifically authorized the appeal board to consider certain information which had not been before the local board.[11] This regulation, containing "[s]pecial provisions when appeal involves claim that registrant is a conscientious objector," directed the appeal board to obtain an advisory recommendation from the Department of Justice in certain cases. § 1626.25(b). Following a hearing before the department, § 1626.25(d), the registrant was permitted to "file with the appeal board a written reply concerning the recommendation of the Department of Justice" and § 1626.-

10. Appellant has referred to himself as a "minister" throughout these proceedings. In the context of selective service cases, the term "minister" is a word of art. See C.F.R. 1622.43(b). In Bradshaw v. United States, 242 F.2d 180, 184 (10 Cir. 1957) the court said:

Mere membership in an organization whose creed includes the conviction that all who sincerely work in the sect are ministers does not exempt the registrant from induction into military service. The test must be based upon all of the facts known as to whether or not the claimant devotes his time to preaching and teaching in the manner of a "vocation", whether or not the functions wh'ch he performs are those normally performed by ministers of other religions and whether or not he bears that relationship to a congregation ordinarily occurring between a cleric and his flock. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59; Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132.

In Robertson v. United States, 417 F.2d 440, 445 (5 Cir. 1969) it was observed: "[T]here must be regularity of religious activities, a vocation rather than an avocation, and a recognized standing as a minister to a congregation or leader of a group of lesser members of registrant's faith." The court also made ref-

erence to a memorandum to the National Selective Service Appeal Board by Hayden Covington, General Counsel of the Jehovah's Witnesses:

[T]he Watchtower society would not contend for a IV–D classification for Jehovah's Witnesses except for those who qualify as Pioneers and as a Congregational Servant and who are devoting their time to ministerial work sufficiently to claim it as their vocation rather than their avocation. The Pioneers to which Mr. Covington referred are a Regular Pioneer who is required to spend an average of 100 hours per month or a total of 1,200 hours annually in ministerial work, and a Special Pioneer who is required to put in an average of 150 hours per month. Thus Robertson, a Vacation Pioneer, did not qualify for the ministerial exemption even within the hierarchy of that religious sect.

Portions of the Covington Memorandum appear in United States v. Stidham, 248 F.Supp. 822, 839 n. 9 (W.D.Mo. 1965).

11. The Military Selective Service Act of 1967, 50 U.S.C.A.App. § 456(j), eliminated the requirement for a Justice Department hearing, and Executive Order No. 11360, July 4, 1967, 1967 U.S.Code Cong. & Admin.News pp. 3497, 3503, expressly rescinded this regulation.

25(e) specifically authorized and directed the appeal board to "give consideration to any reply to such recommendation received from the registrant." [12]

Having carefully considered all the arguments advanced by the appellant, we conclude that he was not denied due process in the evaluation of his exemption claims by the selective service system. We hold that there was a basis in fact for the board's classification of the appellant as I-A and that appellant failed to meet the burden of proof in establishing an exemption.

The judgment of the district court will be affirmed.

12. Although this regulation was first promulgated in 1948 by Executive Order No. 9988, Aug. 20, 1948, 1948 U.S.Code Cong. Serv., pp. 2681, 2703, the amended regulation in existence at the time of Brown's processing was effected by Executive Order No. 10714, June 18, 1957, 1957 U.S.Code Cong. & Admin.News. pp. 908, 909.