**WEAVER  v.  UNITED STATES.**
**No. 14905.**

United States Court of Appeals
Eighth Circuit.
Feb. 19, 1954.

**816**

Hayden C. Covington, Brooklyn, N. Y., for appellant.

Joseph L. Flynn, Asst. U. S. Atty., St. Joseph, Mo. (Edward L. Scheufler, U. S. Atty., Kansas City, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

PER CURIAM.

The defendant was indicted for refusal to be inducted into the armed forces of the United States, in violation of the Universal Military Training and Service Act, 62 Stat. 611, 50 U.S. C.A.Appendix §§ 451–470. He was tried before the District Court without a jury and convicted. From that conviction he appeals. His defense was that he was a Jehovah's Witness and should not have been deprived of a I–O classification. The facts and the basis for the trial court's finding of guilt are admirably stated in that court's explanation of the general finding of guilt, as follows:

"The Court has considered all those matters and the briefs that counsel have submitted during the time the matter has been under advisement.

"The defendant is sentenced to three years in the custody of the Attorney General of the United States.

"I believe I ought to explain the general finding that I made in these cases, the reason that the Court concludes as it does that defendants Dale Edward Weaver and George Marcus Lowe are both guilty of violation of the Selective Service Act of 1948.

"In a criminal action instituted against a defendant for failure to submit to induction under that act, the issues are very limited. This Court is not a reviewing court as to whether or not defendants are entitled to a classification either as conscientious objectors or as ministers. The jurisdiction to so classify is wholly within the purview of the local boards and the appeal boards, established by the Act of Congress and the regulations. The Court here cannot retry the matter of reclassification and under the evidence the defendants have no right to submit before this Court evidence as to their conscientious objector belief or as to their minister status so as to sustain their claim as to either one of those exemptions.

"The issues here are limited to determine whether or not due process of law has been met by the several classification boards in the matter of procedure of defendant's induction into the armed forces, and the only matter that the Court here might consider is whether or not the boards acted within their jurisdiction, whether or not the boards acted arbitrarily or capriciously in the classification of the registrants, whether or not the boards refused to consider evidence which the registrants submitted to them and whether or not there was any evidence offered that was rejected by the board, and generally whether or not there was bias or prejudice or the board was disqualified to sit in the classification of the defendants. Those are the only procedural matters that the Court can consider.

"In the Estep case, Estep v. U. S., 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, the Supreme Court specifically ruled that there must be a determination in a trial such as this as to whether or not there is any rational basis to be found in the Selective Service file for the classification of a registrant under the Selective Service Act of 1948. In the light of the ruling made and the authorities cited by the Supreme Court in the Estep case, I think what Judge Biggs said in his dissenting opinion in the Estep case when it was before the Third Circuit defines a yardstick to be used in the trial of cases of this character as to the character

of proof a selectee may adduce in defense thereof. Judge Biggs in his opinion in the Estep case said that the selectee does not have a right to 'retry his classification on his indictment before a district court of the United States, and he may adduce evidence at his trial to prove that he is a regular or ordained minister of religion entitled to exemption pursuant to provision Section 5(d) of the Act.' That was the 1940 Act referred to there, but the provisions with reference to a minister of religion are practically the same as in the 1948 Act.

"Judge BIGGS went on to say that 'these courses are prohibited to him. Evidence as to his status, if he claims exemption, must be submitted to his local board. He may offer evidence at his trial as a defense to the indictment that the Selective Service agencies, the local board or the appeal board, arbitrarily or capriciously refused to receive or consider evidence which he endeavored to submit as to his status. He may show by the material within his cover sheet that the local board or the appeal board acted capriciously or arbitrarily in refusing to award him the status of an exempt registrant. He may produce evidence in court that material relevant to his status, timely offered by him, was rejected. He may show that members of the local board or the appeal board are biased, prejudiced or disqualified under the Selective Service Regulations to sit in his case. He may show any or all of these things at his trial as proof that he was denied due process of law by the Selective Service agencies. Beyond this, he may not go.' [3 Cir., 150 F.2d 768, 781.]

"Now, here Lowe first makes a claim of a denial of due process before the local board, that the local board was prejudiced in that the chairman of the board stated to him that regardless of what he would say it would not affect their decision that he was to be classified as I–O, and that he was not entitled to a minister classification.

"At that time Lowe was claiming a minister's classification. The rules and regulations with reference to who is entitled to such a classification are well defined in the act and the regulations pertaining thereto. From what Lowe was then contending before the board, the board could well determine from his Selective Service file that he was not a regular minister of religion within the purview of the act, and that he was not entitled to such classification.

"Section 16 of the Selective Service Act defines a minister, duly ordained minister of religion as one who claims to be a regular minister of religion, and in subsection 3 thereof, the term 'regular or duly ordained minister of religion' does not include a person who irregularly or incidentally teaches the principles of a church, religion, sect or organization, and does not include any person who may have been duly ordained a minister in accordance with the ceremonial, rite or discipine of the church, religion, sect or organization yet who does not regularly as a vocation teach and preach the principles of religion and administer the ordinances of public worship as embodied in the creed or principles of his church, sect or organization.

"When the 1948 Act was before Congress, the Senate committee in its report to the Senate specifically states what they considered deferment of ministers and ministerial students to mean. The committee report states that 'Regular or duly ordained ministers of religion and certain theological and pretheological students are exempt from induction but not registration. This subsection parallels the 1940 Act except as regards pretheological students, who were not covered in the original statute. Serious difficulties arose in the administration and enforcement of the 1940 Act because of the claims by members of one particular faith that all of its members were ministers of religion. A minority of the Supreme Court thought that Congress intended to grant an exemption broad enough to include this group,

In order that there may be no misunderstanding of the fact that the exemption granted is a narrow one, intended for the leaders of the various religious faiths and not for the members generally, the terms "regular or duly ordained minister of religion" have been defined in section 16(g).'

"So at the time Lowe was before the local board contending that he was a minister of religion, that board had before it the regulations and the definition of what Congress considered was a minister of religion entitled to deferment under the act. From the file that the board then had before it the board could readily conclude that Lowe was not entitled to deferment as a minister of religion.

"I don't believe that he was denied due process by the board because of the statement attributed to the chairman of the board. The local board placed Lowe in I–O. He took an appeal and his appeal was from their refusal to classify him as a minister of religion, so I can't conceive that the local board was prejudiced against him after having classified him as I–O merely because of the statement attributed to the chairman of the board, and I don't find any denial of due process or prejudice or capriciousness on the part of the local board from that one circumstance.

"His second claim is that he was denied a hearing by a hearing officer of the Department of Justice. When Lowe took his appeal he appealed from the refusal of the local board to classify him as a minister of religion. Lowe did not appeal because the local board refused to classify him as a conscientious objector. However, when he took his appeal under the regulations, the entire classification of Lowe was then submitted to the appeal board *de novo.*

"Now, at the time he took his appeal, the regulations did provide that if the appeal board in any case where the claim of conscientious objector was involved should find that he was not entitled to a I–O classification, or in a class lower than I–O, then his entire file should be transmitted to the district attorney for investigation by the Department of Justice.

"The record here shows that the state appeal board did make a finding that Lowe was not entitled to a classification of I–O, or to a classification lower than I–O; that the appeal board then sent the file to the district attorney for the State of Kansas, and the district attorney returned that file to Lowe, contending that under the Act of Congress, Section 6(j), that they were without jurisdiction because the local board had classified Lowe as I–O. After the file came back to the appeal board they then proceeded to classify Lowe I–A, perhaps in violation of the Selective Service regulations as they then stood; but there is an apparent conflict between such regulations and the Act of Congress. Lowe was classified by the appeal board as I–A on May 26, 1952. On June 18, 1952, the President saw fit to amend the Selective Service Regulations so as to provide that in an appeal involving classification of a conscientious objector when the appeal board found that he was not entitled to I–O or into a class lower than I–O, then the appeal board should proceed to a classification of the registrant without submitting the matter to the Department of Justice or the district attorney.

"The fact that the President saw fit to make such recommendation would indicate that there is some substance to the contention of the Department of Justice that there was a conflict between the previous regulations and the Act of Congress, but I do not believe that we need resolve that conflict here.

"On the same day that the regulations were changed, June 18, 1952, the State Director of the State of Kansas petitioned the state board to reconsider Lowe's classification. The matter was resubmitted to the state board, appeal board, on June 18th. On August 25th, after the new regulations had gone into effect, the state Appeal Board again classified Lowe as I–A. Thereafter, on September 12, 1952, on appeal . to the

Presidential Board, the President's Board classified him as I–A on November 7, 1952. It is upon that classification that the local board ordered his induction into the Armed Forces of the United States, and he proceeds with the administrative process up to the point of refusing to take the step forward in violation of that mandate of induction.

"Because of the fact that the appeal board after the regulations were amended did reconsider his classification and reclassify Lowe, and that subsequently thereto an appeal was taken to the Presidential Board and that board classified Lowe as I–A, I believe that due process was thereby met.

"In United States [ex rel Brandon] v. Downer, [2 Cir.] 139 F.2d 761, an Act of Congress with reference to the composition of boards under the Selective Service system is considered. The act there considered provided that members of the armed forces could not be members of the board, that they should be all civilians. General Hershey was a member of the Presidential Appeal Board and Downer contested his induction into the armed forces because, as an army officer, General Hershey sat on the Presidential Appeal Board that classified Downer as I–A. After that classification was made, the act was changed so as to specifically provide, with reference to the Presidential Board, that members of the armed forces could sit on the board. The Second Circuit in the Downer case held that after that was done there was a reconsideration of Downer's file and he was again classified I–A, and as a consequence of that reconsideration found that due process of law had been followed. The claim that the first classification was not in accordance with due process of law was treated as academic by the court there, and Downer's conviction was sustained.

"So I don't see in Lowe's case, Lowe v. U. S., 8 Cir., 210 F.2d 823, any procedural denial of due process of law at all, either on the part of the local board or on the part of the appeal board as to his final classification of I–A.

"Now, that brings the matter down to the situation that the Court must examine Lowe's file to determine whether or not there is anything in his file from which the appeal board might rationalize a I–A classification. When Lowe filed his original classification he claimed that he was a minister of Jehovah's Witnesses. In his conscientious objector form he acknowledges belief in a Supreme Being, but states that Jehovah's Witnesses believe in the establishment of a Kingdom here on earth. He goes on to explain that his mother started studying with Jehovah's Witnesses and took up the faith and she in turn tutored his brothers and sisters and Lowe; that he has been a Bible student.

"In answer to questions as to on whom he relied most for religious guidance, he says, 'I rely on no one for guidance, and since I am a minister I study the Bible along with Bible helps published by The Watchtower Bible and Tract Society.'

"In answer to another question with reference to the use of armed force, he says, 'I believe in the use of force only when protecting members of my family as in the case of Abram in Genesis 14:-12–16. I do not believe in employing carnal weapons for use in defending a household, because we are told not to kill our fellow man.'

"In the statement on Lowe's original application that he was a minister he says that the tenets—or it might be inferred that it is a tenet of The Watchtower Bible and Tract Society that they believe in 'the establishment of a kingdom here on earth by Jehovah God with Christ Jesus as Ruler.'

"He is asked the question, 'Have you ever given public expression, written or oral to the views herein expressed as the basis for your claim made in Series I above?' and his answer was 'No.'

"In his conscientious objector form he states in answer to certain questions

that 'All Jehovah's Witnesses are ministers and all take part in the activities of the organization,' and in answer to a question, 'Describe carefully the creed or official statements of said religious sect or organization in relation to participation in war,' he says, 'Since we are working for a theocracy to be set up here on earth by Jehovah God and Christ Jesus we feel that there is no man made government worth fighting for.'

"That is a statement of neutrality, not objection to participating in war. The appeal board could readily conclude that that is a statement of neutrality on the part of Jehovah's Witnesses. It is not a statement of pacifism, of a religious belief not to participate in war of any kind under any circumstances or anywhere, formed from religious training and belief.

"In establishing the standard for conscientious objectors and what the Congress decided should be a conscientious objector exemption under the 1948 Act, the legislative history of Section 6(j) reveals that the Senate Committee specifically referred to Berman v. United States, 9 Cir., 156 F.2d 377. In the Berman case the court goes into the question of religious belief of a conscientious objector and specifically points out under the 1948 Act there must be religious training as well as religious belief to establish an exemption on that score.

"The questionnaires of the Selective Service system were especially prepared to sound out the real basis for a claim of exemption under the act. I believe that the boards of appeal could conclude from Lowe's file in this case that all of the statements that he made are such as would be a personal moral code and, under Section 6(j) of the act, a personal moral code or belief against participating in war does not entitle one to an exemption.

"Lowe was asked by Mr. Walsh concerning his belief and concerning his ministry as follows:

" 'Q. And you will always protest the authority of the United States to induct you into the Armed Forces of the United States? A. Yes, sir.

" 'Q. Why do you take that position, Mr. Lowe? A. Because of my obligation to the Higher Power, my Creator, that I have been duly ordained by Him as a minister to carry forth the good news of His kingdom that is to be established here upon earth, and as a minister I should be exempt from the proper classification to carry forth my duties.'

"I think that is a manifestation of what the boards of appeal could find from a perusal of Lowe's Selective Service file, that is, that his claim of conscientious belief was based upon a covenant that he feels that he has with reference to preaching the word of Jehovah according to the tenets of the Watchtower Bible and Tract Society, and that if that is interrupted he would be a covenantbreaker, as he states in his letter to the local board, and that it is on that basis he is claiming a conscientious objector exemption.

"The board could find that that does not come within the purview of a conscientious objector as defined in the act, and it is for those reasons, tersely stated, that I conclude that Lowe is guilty of failing to submit to induction in the Armed Forces of the United States.

"Now with reference to the defendant Weaver, what I said concerning the limit on the issues of course applies in his case also. I will not go back and repeat that because Weaver makes no claim here of a denial of due process of law until the Selective Service authorities reached his case at the state appeal board level. It is there that he claims that he was denied due process of law because he was not granted a hearing by a hearing officer of the Department of Justice.

"At the time Weaver took his appeal the regulations, as I pointed out before, did provide that if the state board found

that Weaver was not entitled to a I–O classification or lower than I–O, then they should submit the matter to the Department of Justice for investigation and hearing. I pointed out with reference to the conflict between the then regulations and the statute as enacted by Congress, which provided that if the local board did classify him I–O, then it was not necessary to send the file to the Department of Justice.

"But the fact of the matter was that on June 18, 1952, after the state board had previously classified Weaver as I–A, the regulations were changed. On that same day his file shows that the state director asked for a reconsideration, as the state director was authorized to do under the regulations, and that the state board did reconsider Weaver's classification, so that on August 25, 1952, in accordance with the then regulations, he was again reclassified I–A, and an appeal was thereafter taken by the state director to the Presidential Appeal Board and the Presidential Appeal Board classified Weaver as I–A on November 7, 1952.

"The point has been made that he would have been better off if the local board had not given Weaver a classification of I–O. Well, that is not for the Court to consider because the justice of the regulations is a matter wholly within the prerogative of the administrative branch of the government under the direction of the President, and the reason for that regulation being changed as they were comes wholly within their authority.

"I come to the same conclusion as they did in the Downer case, that a change in the regulations and the subsequent review by the state board and review by the Presidential Board was within the jurisdiction of the regulations and the act of Congress, and that there was no denial to Weaver of due process of law in that respect. So that brings us down to the question to consider whether or not there is any evidence in Weaver's file to sustain his I–A classification. There is ample in Weaver's file to sustain such a classification,

and from which the appeal board could rationalize that he should be placed in class I–A.

"In his original classification he did not claim to be a minister, he did not even fill out Section 5 thereof, or that he was a student studying for the ministry. In his conscientious objector form, filed on November 13, 1948, he manifested belief in a Supreme Being, he says, 'I do not believe Almighty God according to his word permits anyone to take the life of his fellow man without destruction to his everlasting life.'

"In answer to 'Explain how, when and from whom or from what source you received training and acquired a belief which is the basis of your claim made in Series 1 above,' he answered, 'I received Bible training from my family.'

"In answer to the question, 'Under what circumstances, if any, do you believe in the use of force?' he says, 'Only when being personally attacked.'

"In answer to question No. 6, 'Describe the actions and behavior in your life which in your opinion most conscientiously demonstrates the consistency and depth of your religious convictions,' he said, 'I attend Bible studies. I do unto others as I wish them to do unto me.'

"In answer to a question, 'Are you a member of a religious sect or organization?' he answered, 'No.'

"Weaver was classified I–A under the 1940 Act on November 11, 1948. He did not take any appeal from that classification as he then had a right to appeal. He remained in that classification for a period of nearly two years until September 1, 1950, when he was then classified 3–A by his local board. Later, on October 22, 1951, he was classified in I–O, and on November 5, 1951, he personally appeared before the board.

"Insofar as his file reveals, the first time that Weaver ever contended that he was a minister of religion, within the purview of the act, was when he appeared before the local board and the statements that are contained in Plain-

tiff's Exhibit 2–H, submitted to the board on that date, clearly reveal that he is not a minister of religion within the meaning of the Act of Congress.

"In Martin v. United States, 4 Cir., 190 F.2d 775, the Court has specifically ruled that the definition of minister, as defined in the Act of Congress, governs and it is not what or who is considered a minister with reference to a particular sect or religion as to how they define the term minister; that one entitled to exemption as a minister must bring himself within the definition contained in the act.

"Definitely there is sufficient in Weaver's file, notwithstanding the fact that he submits from the Watchtower Bible and Tract Society the statement that he is a minister, a duly ordained minister of Jehovah's Witnesses, that he is not such under the act.

"His testimony before the board reveals that he does attend Jehovah's Witnesses meetings, and that all of the Jehovah's Witnesses are ministers, and that they have what is termed a company servant over them, and that the company servant has charge of certain of their groups.

"Clearly Weaver is one of those whom the Congress had in mind when it enacted the 1948 Act, as shown by the legislative history of that act, that the Congress did not intend to include all those belonging to a sect where all of its members are ministers. It intended to exempt from the provisions of the act on the grounds of a minister exemption only those who were leaders in a particular sect or religious organization.

"From the evidence before the Court, perhaps the company servant who is over a number of the other Jehovah's Witnesses, if he regularly performs the functions of a minister within the purview of the act, might be exempt, but each member of the Jehovah's Witnesses who claims to be a minister is not qualified for such an exemption.

"So there is substantial evidence in Weaver's file from which the appeal boards could conclude, as they did, that he was not entitled to a minister classification, and sufficient in his file from which the appeal boards could conclude that any belief, conscientious belief with reference to participating in war of any kind, was one of a personal moral code and therefore that he was not exempt within the act.

"Whether the appeal boards were right or wrong in making their decision is not for me to say. I may have made a different classification had I been sitting upon the appeal boards in Lowe's case. But that is not for me to say here. I have no jurisdiction to weigh the testimony, to weigh the facts in the Selective Service file and say that the appeal boards should not have classified either one of these defendants I–A as they did. So long as there is any rational basis for classification, and I believe that there is, due process of law has been met. There is no procedural denial or excess of jurisdiction on behalf of the boards here shown, and I do not find any in either one of these cases. That is the reason why I find the defendants guilty as charged in the information."

■ It is apparent that the trial court rested its conclusion that there was a rational basis in fact for the appeal board's I–A classification found in the defendant's conduct and his evidentiary statements made to the local board pertaining to his beliefs relative to participating in war. The trial court construed that evidence as not necessarily amounting to a declaration of conscientious objection to participating in "war." At the time this case was tried, the case of Taffs v. United States, 8 Cir., 208 F.2d 329, had not been decided. Therein this court held under substantially similar facts that a conscientious objector status was established. And in Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 157, the Supreme Court appears to have definitely held that there must be "some affirmative evidence to support the * * * board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his

activities." Our interpretation of the majority opinion in the Dickinson case is based not only upon our understanding of it but also upon the construction given it in the dissenting opinion wherein it is stated:

"Under today's decision, it is not sufficient that the board disbelieve the Registrant. The board must find and record affirmative evidence that he has misrepresented his case  *  *  *."

■ The record in this case is devoid of evidence to support the Appeal Board's I–A classification or to support its denial of the local board's I–O classification.

Upon the authority of Taffs v. United States and Dickinson v. United States,[1] the judgment must be reversed. It is so ordered.

1. Since the submission of this case our attention has been called to the cases of Schuman v. United States, 9 Cir., 208 F.2d 801, and Jewell v. U. S. (Thoman v.

United States), 6 Cir., 208 F.2d 770, applying the Dickinson case to facts similar to those in the case at bar and with the same result.