**Walker Dale Boston BATES,**
Appellant,

v.

**UNITED STATES of America,** Appellee.

No. 15057.

United States Court of Appeals
Eighth Circuit.

Oct. 19, 1954.

Hayden C. Covington, Brooklyn, N. Y., for appellant.

G. Thomas Eisele, Asst. U. S. Atty., Little Rock, Ark. (Osro Cobb, U. S. Atty, Little Rock, Ark., on the brief), for appellee.

Before GARDNER, Chief Judge, and THOMAS and COLLET, Circuit Judges.

GARDNER, Chief Judge.

Appellant was indicted, tried and convicted on a charge of refusing to submit to induction into the armed forces of the United States. The case was tried to the court and a jury and at the close of the government's evidence appellant, whom we shall refer to as defendant, moved for a judgment of acquittal on the grounds that:

(1) There is no evidence to show that defendant is guilty as charged in the indictment.

(2) The Government has wholly failed to prove the violation of the Act and Regulations by the defendant as charged in the indictment.

(3) The undisputed evidence shows that the defendant is not guilty as charged.

(4) The evidence shows that the classification of the defendant in class I–A was and is without basis in fact, and was and is arbitrary, capricious and contrary to law.

(5) The evidence fails to show that defendant was subject to induction into the armed forces of the United States under the Selective Service Act of 1948 and the regulations made pursuant thereto.

(6) The evidence shows that defendant was not subject to be drafted and inducted into the armed forces of the United States at the time and place charged in the indictment.

The motion was denied. It was renewed at the close of all the testimony and again denied. The case was sent to the jury and a verdict of guilty was returned based upon which defendant was sentenced to a term of imprisonment. From the judgment and sentence so entered he prosecutes this appeal.

At all times pertinent to the issues here involved defendant was of draft age and physically fit for induction into the armed forces of the United States. He was classified I–A. His contention is that this classification was arbitrary and capricious and that he was entitled to a classification of IV–D as a minister of religion. The controlling issue is whether defendant's classification as I–A finds basis in fact as reflected by the record.

■ The findings of the board need not have been sustained by substantial evidence nor such as would satisfy the reviewing court. Indeed, if made in conformity with the regulations they are final even though they may be erroneous. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152; Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59; Eagles v. United States ex rel. Samuels, 329 U.S. 304, 67 S.Ct. 313, 91 L.Ed. 308; Eagles v. United States ex rel. Horowitz, 329 U.S. 317, 67 S.Ct. 320, 91 L.Ed. 318. In Estep v. United States, supra, in referring to the scope of review of orders of the local boards it is said [327 U.S. 114, 66 S.Ct. 427]:

"The provision making the decisions of the local boards 'final' means to us that Congress chose not to give administrative action under this Act the customary scope of judicial review which obtains under other statutes. It means that the courts are not to weigh the evidence to determine whether the classification made by the local boards was justified. The decisions of the local boards made in conformity with the regulations are final even though they may be erroneous."

■ Section 1622.1, Selective Service Regulations, provides that every registrant is I–A "until his eligibility for deferment or exemption from military service is clearly established * * *." The burden of proving his eligibility to exemption from military service was therefore upon defendant. As said in Dickinson v. United States, supra [346 U.S. 389, 74 S.Ct. 157]:

"And since the ministerial exemption is a matter of legislative grace, the selective service registrant bears the burden of clearly establishing a right to the exemption."

■ Again it is said in Dickinson v. United States, supra:

"Local boards are not courts of law and are not bound by traditional rules of evidence; they are given great leeway in hearing and considering a variety of material as evidence. If the facts are disputed the board bears the ultimate responsibility for resolving the conflict— the courts will not interfere. Nor will the courts apply a test of 'substantial evidence.' However, the courts may properly insist that there be some proof that is incompatible with the registrant's proof of exemption."

■■ With these rules in mind we turn to a consideration of the facts and circumstances as they were disclosed to the board with a view of determining whether they may properly be held to constitute a basis in fact for the board's action. Even in the absence of direct evidence the board was entitled to consider all the evidence and circumstances presented and such inferences as might reasonably be drawn therefrom. The trial judge in the instant case very carefully considered the entire record and in a memorandum overruling defendant's motion for judgment of acquittal marshals the facts and circumstances in chronological sequence as follows:

"I have examined the defendant's file, which has been introduced in evidence and I am satisfied and find as a matter of law that there was basis in fact for the classification accorded him by the Presidential Appeal Board and I shall so instruct the jury. I now desire to make a brief statement for the record for the basis for my so finding. The file discloses that the defendant registered with Oregon Local Board 14 at Roseburg,

Douglas County, Oregon on September 15, 1948, at a time when he was approximately 20 years of age. In his questionnaire he signed Series XIV consisting of a statement that by reason of religious training and belief, he was conscientiously opposed to participation in war in any form and requesting that he be supplied a special form for conscientious objectors, Selective Service Form No. 150, to be filled out by him and returned to the Local Board for further consideration. It is noted that he did not fill out any part of Series VI of the questionnaire which was to be filled out by every registrant who is a minister or a student preparing for the ministry. This questionnaire was filed with Local Board on October 3, 1948.

"On October 4, 1948 the Local Board mailed the defendant the Special Form for conscientious objectors above referred to and said form was returned executed to the Board on October 11, 1948; in this form the defendant stated that he was conscientiously opposed to participation in war in any form by reason of his religious training and belief, and, further, that he was conscientiously opposed to participation in noncombatant training or service in the Armed Forces. In answer to certain specific questions contained in said form, he undertook to set out the nature and basis of his alleged conscientious objection to military service of any kind; I shall have occasion to refer to some of his answers later on.

"It seems from the endorsements on the questionnaire, that on February 21, 1949 he was classified 3–A, a dependency classification, to which classification he made no objection; it further appears that on January 3, 1951 he was classified 4–E, which at that time was the conscientious objector classification, and he made no objection to that classification. It is noted that he was given the 4–E classification just mentioned after he had filled out and filed with the Board a New Information Sheet which was mailed to him on December 11, 1950; from this sheet it appears that at the time he was employed as a 'carrier, driver' for the Robert Dollar Lumber Company, having been employed there since July 15, 1948; he further stated among other things, that for 'religious reasons' he could not participate in any form of military service.

"On November 27, 1951 defendant was re-classified by the Board and placed in Class 1–A–O, which meant that he was liable for induction into the armed forces to serve in a noncombatant capacity. On December 8, 1951 he protested this classification, and stated that he desired to be classified as 1–O, which was the classification at that time assigned to conscientious objectors, and he requested a personal appearance before the Board. This was granted, and he appeared before the Board on January 16, was questioned by a Dr. Roach, presumably the chairman or a member of the Board, and was classified 1–O in accordance with his desires. In connection with his appearance before the Board he filed four affidavits executed by fellow Jehovah Witnesses to the effect that they believed that he was a conscientious objector.

"Now, shortly after he got his 1–O classification, which he wanted, he returned to his native home at Opal, near Mena, Arkansas, and was perfectly satisfied apparently with his classification until along in the fall of 1952 he found out that he was going to have to go into an occupation promoting the national health and welfare, as prescribed by law, which apparently he did not desire to do. In this connection the file reflects that on November 12, 1952, he wrote to Oregon State Selective Service Headquarters, and in the course of his letter he asked the question, 'Just when was this law past (sic) to draft labor.' On December 1, 1952 State Headquarters advised him of his obligation to engage in certain types of work for a period of 24 months by reason of the provisions of the Universal Military Training and Service Act of 1951, as amended [50 U.S.C.A.Appendix, § 451 et seq.].

"It was about two weeks after the letter last referred to was written that the

defendant *for the first time* made the claim that he was a minister of the Gospel and was entitled to be classified as such; now, just as he had said nothing about being a minister when he was trying to get and retain a 1–O classification, so he said nothing about being conscientiously opposed to participating in war in any form while he was seeking to obtain a ministerial classification. The file reflects that an appeal was taken to the State Appeal Board by the State Director, which appeal was taken to protect the rights of the defendant, and the State Appeal Board unanimously affirmed the Local Board's classification; an appeal from the action of the State Appeal Board was taken by the State Director to the Presidential Appeal Board, and that Board put the defendant in Class 1–A.

"In my opinion, there can be no question that there was an adequate factual basis for the actions of the Local Board, the State Appeal Board, and the Presidential Appeal Board in refusing to classify the defendant as a minister. One of the requirements for ministerial exemption is that the registrant must preach and teach the principles of religion and administer the ordinances of public worship 'as his regular and customary vocation'; this the defendant's own evidence establishes that he did not do. It seems to me, and it must have appeared to the officials of the Selective Service System, that his activities in leading study groups and in engaging in door-to-door preaching were no different from the activities of other members of his sect. This defendant was a farmer and was also a Jehovah Witness. I recognize, of course, that all Jehovah Witnesses claim to be ministers, but the courts have consistently refused to recognize that claim as a basis for ministerial classification under the draft law.

"I am likewise convinced that the complete change of front effected by the defendant in abandoning his claim for a 1–O classification as soon as he found out that he was going to have to go into a certain line of work which he did not care for, and asserting a claim for a ministerial exemption to which it was found that he was not entitled, justified the Presidential Appeal Board in determining that neither of the claims made by him was honest or sincere and that he should be put in Class 1–A.

"Moreover, the answers given by the defendant to the questions propounded to him on the Special Form for Conscientious Objectors and other statements made by him are in certain instances vague and unsatisfactory, and to my mind they lack the genuineness and spontaniety which one would normally expect from a person, even though not highly educated, who held actual and sincere conscientious objections, based on personal religious training or belief, to participating in war, such objections extending not only to combat service but to noncombatant service as well; or at least, said statements may have appeared insincere to the Presidential Board. To my mind said Board might well have felt that these statements, instead of being genuine and conscientious statements of personal belief, were merely artificial and stereotyped statements of hackneyed phrases and supposed proof texts which the defendant had heard or learned from others, or which he had copied from writings of his sect."

We have carefully examined the record and find that the trial judge's summary of the facts is so comprehensive as to make it unnecessary to make further reference to them. Manifestly, each case is dependent upon its particular facts. The trial court's decision, we think, finds further support in the decision of the Supreme Court in Cox v. United States, supra. In principle what is said in that case is persuasive in the instant case because of the marked similarity of the facts. In the course of the opinion in that case it is said, inter alia [332 U.S. 442, 68 S.Ct. 119]:

"As he made claim of conscientious objector classification only after he was reclassified I–A from IV–F and still later claimed ministerial exemption, the board was justified in deciding from the available

facts that Cox had not established his ministerial status. The board might have reasonably held that nothing less than definite evidence of his full devotion of his available time to religious leadership would suffice under these circumstances."

The evidence in support of the ministerial classification in the Cox case was, we think, quite as strong as in the instant case. Here the Selective Service Boards might well have inferred from the proven facts and circumstances that defendant's claim of a ministerial status was lacking in sincerity. We agree with the trial court that there was factual basis for the action of the Board in classifying defendant 1–A and in denying his claim of exemption from military service. The judgment appealed from is therefore affirmed.