**Donald Jackson DE MOSS, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 15112.**

United States Court of Appeals
Eighth Circuit.

Dec. 29, 1954.

Rehearing Denied Jan. 19, 1955.

120

Hayden C. Covington, Brooklyn, N. Y., for appellant.

Robert J. Spayde, Asst. U. S. Atty., Oskaloosa, Iowa (Roy L. Stephenson, U. S. Atty., Des Moines, Iowa, and John C. Stevens, Asst. U. S. Atty., Muscatine, Iowa, on the brief), for appellee.

Before GARDNER, Chief Judge, and COLLET and VAN OOSTERHOUT, Circuit Judges.

COLLET, Circuit Judge.

Defendant was indicted, tried and convicted on a charge of refusing to submit to induction into the armed forces of the United States. He contends that he was a minister of Jehovah's Witnesses. The local draft board denied his claims as a minister but classified him as a conscientious objector. On appeal, the appeal board denied both and classified him I–A, eligible for military service. The draft board ordered his induction. He refused to be inducted. His indictment followed. The case was tried to the court without a jury.

One of the questions presented on this appeal is the same as one of those presented in Bates v. United States, 8 Cir., 216 F.2d 130, i. e., that there was no basis in fact for the denial of the conscientious objector status by the appeal board and that the final classification was arbitrary and capricious. The other point urged is that defendant was illegally deprived of a Department of Justice investigation. The necessary facts will be stated in connection with the determination of each of the issues.

■ The question of when a classification may be held to be supported in fact by the record and free from falling into the category of being legally capricious or arbitrary is not subject to a general definition which will fit all cases. The most that can be done is to apply general established principles to individual cases. Those principles are stated in United States v. Simmons, 7 Cir., 213 F.2d 901, and need not be repeated here. We note one point of disagreement with the Simmons case, however. The Seventh Circuit misinterprets our opinion in Weaver v. United States, 8 Cir., 210 F.2d 815. By "affirmative evidence" as used in the Weaver case, we do not mean that the draft board must make an independent record in opposition to the registrant's statements and conduct, if such statements and conduct constitute a basis in fact for a conclusion that the registrant's claim of exemption was not made in good faith. The requirement of Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, is met if the board "finds" or discovers in the recorded "record" evidence of inconsistency or conduct which is incompatible with the registrant's sincerity. We so held in Bates v. United States, 8 Cir., 216 F.2d 130. In the Weaver case we were dealing with the question of whether the record disclosed a basis in fact for the conclusion that Weaver was not opposed to "war in any form" because of the particular beliefs of his particular sect, assuming the sincerity of his expressed beliefs,—the question which arose in Taffs v. United States, 8 Cir., 208 F.2d 329—while in Bates v. United States we were dealing with the question involved in the Simmons case.

The question here is whether the draft board record discloses evidence which is sufficiently incompatible with the registrant's sincerity in making his claim of exemption as to constitute a basis in fact for the conclusion that defendant's claim for exemption was not made in good faith.

■ The appeal which was taken for him because of his objection to his classification as a conscientious objector and denying his claim for total exemption as a minister did not waive his right to classification as a conscientious objector, although he was contending for the lower ministerial classification. Pine v. United States, 4 Cir., 212 F.2d 93; United States v. Close, 7 Cir., 215 F.2d 439; United States v. Wilson, 7 Cir., 215 F.2d 443. But the appeal reopened the classification for consideration de novo. Cox v. Wedemeyer, 9 Cir., 192 F.2d 920.

Defendant contends there is no basis in fact for the appeal board's I–A classification "because there are no facts that contradict the documentary proof submitted by the appellant." The difficulty with that position lies in the fact that the documentary evidence, submitted by defendant, was contradictory and in some respects unconvincing and subject to being deemed incredible by the draft board. The question is—was there basis in fact in those contradictions, inconsistencies and incredulous statements for the conclusion of the appeal board that defendant's claim for exemption was not made in good faith.

It was said in Jewell v. United States, 6 Cir., 208 F.2d 770, 771, that "where there is no substantial evidence to support a classification made by such [draft] Board, the order is void." While in United States v. Simmons, 7 Cir., 213 F.2d 901, 904, we find this language: "When the record discloses any evidence of whatever nature which is incompatible with the claim of exemption we may not inquire further as to the correctness of the board's order."

■ We do not construe the language quoted from those opinions as necessarily indicating a conflict of opinion between the Sixth and Seventh Circuits. Both, as well as all others, recognize the controlling principle announced in Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567, that the courts are not to weigh the evidence to determine whether the classification made by the draft boards was justified. And "justification" exists if the board's

order is made in conformity with the regulations. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567; Bates v. United States, 8 Cir., 216 F.2d 130. If the order is not so made, jurisdiction is wanting. Jurisdiction is absent only when, as the courts have declared, an examination of the record discloses no proof that is incompatible with the registrant's proof of exemption. Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 157. If the term "substantial evidence" as used in the Jewell case was used in the sense of being substantial in comparison with evidence contradictory thereto, in our opinion it would be in conflict with the express direction of the Dickinson case which states: "Nor will the the courts apply a test of 'substantial evidence'." But if the term is used in the sense that there need be only sufficient factual indication in the record incompatible with the registrant's claim of exemption to prevent the board's order from being legally arbitrary and capricious, the use of the terminology "substantial" harmonizes with the criterion laid down by the Supreme Court. We place the latter construction on the term where we find it in opinions dealing with this question.

We are not now dealing with the question of whether the record contains basis in fact for a denial of the registrant's claim for a ministerial status. He concedes that there was ample record justification in fact for the board's denial of that classification. He now contends, as stated, that there was no basis in fact for the denial of his conscientious objector classification.

■ Defendant contends that all the inconsistencies and statements of doubtful veracity contained in the record pertained only to his claim for ministerial classification and may not be considered as having any bearing upon the sincerity of his claim for exemption as a conscientious objector or the verity of his statements relating to the latter. That argument is not sound. If there was justification in the record for the board's

conclusion that defendant was not telling the truth about so important and material a matter as his ministerial qualification, there was justification for the conclusion that he was untruthful about his claim of being a conscientious objector.

Defendant stated in his questionnaire that he was born November 24, 1932, and had been a minister of Jehovah's Witnesses since April 5, 1941 when he was approximately eight and one-half years old. In the absence of indication that he was a prodigy, that would be hard to believe. He filed a sworn statement later in which he stated he had been "one of the Lord's Witnesses" since April, 1943. He submitted to the board a statement of his presiding minister in which the latter stated that defendant averaged five hours a month in ministerial work. Defendant in his own sworn statement stated that he averaged 100 hours a month in ministerial work. The presiding minister stated that in February, 1953, defendant was recognized as a student of the ministry. Defendant stated that he had been a minister since 1941, while in another statement he said he was baptized April 27, 1952, and in March, 1953, was attending a Theocratic Ministry school. A written statement of another witness for defendant stated that in March, 1953, defendant was an ordained minister of the gospel.

Upon examination of one of the members of the appeal board which made the I–A classification, the witness testified that the appeal board concluded from the record made before the local board that defendant had misrepresented the facts. The chairman of the local board testified that at the suggestion of the appeal board the local board concluded that defendant's statement that he was a minister or a ministerial student could not be accepted. No point is made on this appeal as to the propriety of the admission of this evidence, although it was objected to in the trial court. It is, of course, not the nature of proof upon which the action of the appeal board is to be evaluated by us. That

proof must come from the record made before the board. It does, however, verify the rather obvious inference we draw from the record that it was upon the theory of lack of verity and sincerity that the appeal board based its classification.

■ As we have stated heretofore, no hard and fast rule may be laid down defining the quantum of proof necessary to prevent a classification from being arbitrary and capricious and without basis in fact. Each case must be determined on its pertinent facts. Upon the record before us we are unable to say that sufficient proof to justify the board's classification was lacking. It follows that the classification was final and conclusive.

■ The point now made, that the denial of an investigation and hearing by the Department of Justice was contrary to the Selective Service Act, presents the question of the validity of the President's Executive Order and the amended Selective Service Regulations.

The Act of Congress, 50 U.S.C.A.Appendix, § 456(j), which is involved, is as follows:

"(j) Nothing contained in this title (sections 451–470 of this Appendix) shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. Religious training and belief in this connection means an individual's belief in a relation to a Supreme Being involving duties superior to those arising from any human relation, but does not include essentially political, sociological, or philosophical views or a merely personal moral code. * * * Any person claiming exemption from combatant training and service because of such conscientious objections shall, if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board. Upon the filing of such appeal, the appeal board shall refer any such claim to the Department of Justice for inquiry and hearing. The Department of Justice, after appropriate inquiry, shall hold a hearing with respect to the character and good faith of the objections of the person concerned, and such person shall be notified of the time and place of such hearing. The Department of Justice shall, after such hearing, if the objections are found to be sustained, recommend to the appeal board that (1) if the objector is inducted into the armed forces under this title (said sections) he shall be assigned to noncombatant service as defined by the President, or (2) if the objector is found to be conscientiously opposed to participation in such noncombatant service, he shall in lieu of such induction be ordered by his local board, subject to such regulations as the President may prescribe, to perform for a period equal to the period prescribed in section 4(b) (section 454(b) of this Appendix) such civilian work contributing to the maintenance of the national health, safety, or interest as the local board may deem appropriate and any such person who knowingly fails or neglects to obey any such order from his local board shall be deemed, for the purpose of section 12 of this title, to have knowingly failed or neglected to perform a duty required of him under this title (sections 451–454 and 455–471 of this Appendix). If after such hearing the Department of Justice finds that his objections are not sustained, it shall recommend to the appeal board that such objections be not sustained. The appeal board shall, in making its decision, give consideration to, but shall not be bound to follow, the recommendation of the Department of Justice together with the record on appeal

from the local board. Each person whose claim for exemption from combatant training and service because of conscientious objections is sustained shall be listed by the local board on a register of conscientious objectors."

The foregoing quoted portion of § 456 (j) as it now appears in the statute is substantially the same as it was in the 1940 Act before its re-enactment in 1948.

Prior to their amendment June 17, 1952, the Selective Service Regulations promulgated under the 1940 Act and under the present § 456(j) provided that when there was an appeal from the local board's classification and the registrant was claiming a classification of I–A–O, opposed to combatant military service but not opposed to noncombatant military service, if the appeal board concluded he was not entitled to either that classification or a lower one it should refer the file to the Department of Justice.

The regulations further provided that if the claim being made by the registrant was for a classification of I–O, conscientiously opposed to both combatant and noncombatant military service, on appeal if the appeal board found that he was not entitled to that classification or the lower totally exempt ministerial classification, the claim should be referred to the Department of Justice for hearing, investigation and report. The pertinent portions of the text of the regulations prior to their amendment are set out in the footnote.[1] Thus it is apparent that if the statute—§ 456(j)— be construed as not requiring a Department of Justice investigation and report unless, as the statute says, the claim for conscientious objector status is *denied* by the local board, there was · a conflict between the statute and the regulations which, prior to June 17, 1952, required a Department investigation and report when the claim for conscientious objector classification was *granted* by the local board.

1. "1626.25. Special Provisions When Appeal Involves Claim That Registrant is a Conscientious Objector. (a) If an appeal involves the question whether or not a registrant is entitled to be sustained in his claim that he is a conscientious objector, the appeal board shall take the following action:
"(1) If the registrant has claimed, by reason of religious training and belief, to be conscientiously opposed to participation in war in any form and by virtue thereof to be conscientiously opposed to combatant training and service in the armed forces, but not conscientiously opposed to noncombatant training and service in the the armed forces, the appeal board shall first determine whether or not such registrant is eligible for classification in a class lower than Class I–A–O. If the appeal board determines that such registrant is eligible for classification in a class lower than I–A–O, it shall classify the registrant in that class. If the appeal board determines that such registrant is not eligible for classification in a class lower than I–A–O, but is eligible for classification in Class I–A–O, it shall classify the registrant in that class.
"(2) If the appeal board determines that such registrant is not eligible for classification in either a class lower than Class I–A–O or in Class I–A–O, the appeal board shall transmit the entire file to the United States Attorney for the judicial district in which the office of the appeal board is located for the purpose of securing an advisory recommendation from the Department of Justice.
"(3) If the registrant claims that he is, by reason of religious training and belief, conscientiously opposed to participation in war in any form and to be conscientiously opposed to participation in both combatant and noncombatant training and service in the armed forces, the appeal board shall first determine whether or not the registrant is eligible for classification in a class lower than Class I–O. If the appeal board finds that the registrant is not eligible for classification in a class lower than Class I–O, but does find that the registrant is eligible for classification in Class I–O, it shall place him in that class.
"(4) If the appeal board determines that such registrant is not entitled to classification in either a class lower than Class I–O or in Class I–O, it shall transmit the entire file to the United States Attorney for the judicial district in which the office of the appeal board is located for the purpose of securing an advisory recommendation from the Department of Justice." 32 CFR 1626.25, 1949 Ed.

On June 17, 1952, by Executive Order 10363, Vol. 17 Federal Register No. 119, June 18, 1952, U.S.Code Cong. and Adm. News 1952, p. 1065, the President, under authority given him by § 10 of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 460,[2] amended the Selective Service Regulations relating to appeals involving conscientious objector classifications by providing that if the registrant had been given the classification claimed of Class I–O by the local board, on appeal the appeal board should proceed with the classification, without reference to the Department of Justice.[3] It would appear that this amendment was for the purpose of eliminating the pre-existing conflict between the regulations and the Act of Congress.

But defendant contends that the amendment of the regulations conflicts with § 456(j) of the statute, supra, and is therefore void. He contends that under the proper and logical construction of § 456(j) it required that his case be referred to the Department of Justice by the appeal board, although the local board gave him the classification of I–O, and that the failure to do so deprived him of due process, rendering the classification made by the appeal board void.

By § 460 of the Act of Congress, supra, the President was given broad and general power to prescribe regulations governing the procedure to be followed by the local and appeal boards. Only in the event such regulations prescribed by him conflict with the Act of Congress can they be held to be invalid.

Judge Lemmon, of the District Court of California, in United States v. Frank, 114 F.Supp. 949, reached the conclusion that under § 456(j) a conscientious objector was entitled to have his case referred to the Department of Justice on appeal, although his claim to a conscientious objector classification had been sustained by the local board. Judge Ridge, of the District Court of Missouri, reached an opposite conclusion. Weaver v. United States, 8 Cir., 210 F.2d 815. In Elder v. United States, 202 F.2d 465, 468, the Court of Appeals for the Ninth

2. "§ 460(b) The President is authorized—
"(1) to prescribe the necessary rules and regulations to carry out the provisions of this title; * * * (3) * * * He shall create and establish * * * local boards * * *. * * * * The decisions of such local board shall be final, except where an appeal is authorized and is taken in accordance with such rules and regulations as the President may prescribe. * * *"

3. The language of the amended regulation in this respect is:
"§ 1626.25. Special Provisions When Appeal Involves Claim That Registrant is a Conscientious Objector. (a) If an appeal involves the question whether or not a registrant is entitled to be sustained in his claim that he is a conscientious objector, the appeal board shall take the following action:
"(1) If the registrant has claimed, by reason of religious training and belief, to be conscientiously opposed to participation in combatant training and service in the armed forces, but not conscientiously opposed to participation in noncombatant training and service in the armed forces, and the local board has classified the registrant in Class I–A–O, the appeal board shall proceed with the classification of the registrant. If in such a case, the local board has classified the registrant in any class other than Class I–A–O, the appeal board shall transmit the entire file to the United States Attorney for the federal judicial district in which the appeal board has jurisdiction for the purpose of securing an advisory recommendation from the Department of Justice.
"(2) If the registrant has claimed, by reason of religious training and belief, to be conscientiously opposed to participation in war in any form and by virtue thereof to be conscientiously opposed to participation in both combatant and noncombatant training and service in the armed forces, and the local board has classified the registrant in Class I–O, the appeal board shall proceed with the classification of the registrant. If, in such a case, the local board has classified the registrant in any class other than Class I–O, the appeal board shall transmit the entire file to the United States Attorney for the federal judicial district in which the appeal board has jurisdiction for the purpose of securing an advisory recommendation from the Department of Justice."

Circuit, in discussing another question, i. e., the necessity for a full disclosure of the report of the Federal Bureau of Investigation made in connection with a reference to the Department of Justice, took note of the statutory language —"if such claim [to conscientious objector status] is *not* sustained by the local board," the appeal board should refer the "claim" to the Department of Justice—and stated: "Only in those instances where the registrant's objections have not been sustained by the board are referrals to be made to the Department." In United States v. Nugent, 346 U.S. 1, 8, 73 S.Ct. 991, 996, 97 L.Ed. 1417, the Supreme Court, in passing upon the same question under discussion in the Elder case, used this language:

> "Yet in this special class of cases, involving as it does difficult analyses of facts and individualized judgments, Congress directed that the assistance of the Department be made available *whenever a registrant insists that his conscientious objection claim has been misjudged by his local board.*" (Italics ours).

The italicized words of the foregoing quotation are heavily relied upon to sustain the view that § 456(j) should be construed to mean that *whenever* a registrant is complaining on appeal about a local board's classification, the statute contemplates a reference to the Department of Justice, although the registrant has been classified as a conscientious objector by the local board. And that argument is further advanced by the practical situation presented in a case such as this one. Here the registrant was contending for a Jehovah's Witness ministerial classification, which to a Jehovah's Witness included a claim that he was conscientiously opposed to either combatant or noncombatant military service. He got the conscientious objector classification by the local board but it denied the lower ministerial classification. He protested that he was not only a conscientious objector, but that and more—a minister. The appeal board not only denied his claim for ministerial classification but took away the classification given him by the local board of a conscientious objector. However proper that action of the appeal board may be on the merits does not effectively answer the argument that the statute was intended to give a registrant the right to a Department of Justice investigation on appeal when his "claim", in this instance a claim to ministerial classification, was denied by the local board. If this precise question had been before the Supreme Court in the Nugent case and the above-quoted language had been used in that connection, we would be justified in upholding defendant's construction of the statute.

But the italicized language was not used in connection with a contention that the power of the President had been exceeded by him and that the Selective Service Regulation promulgated by him under congressional authority was invalid. The language of the Supreme Court in the Nugent case was limited to that case where a registrant was insisting that his conscientious objector claim had been misjudged and where that claim had been denied by the local board. The Government's contention, that being so limited it cannot be decisive upon the facts of this case, is sound.

■ The language of the statute does not conflict with the amended regulation. The opening sentence of § 456(j) of the statute undoubtedly included defendant. It reads:

> "Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form."

Defendant could not claim to be a minister of Jehovah's Witnesses without claiming to be "conscientiously opposed to war in any form." The latter claim, which he was making, was granted. The statute plainly says that when that claim is *denied* reference shall be made to the

Department of Justice. The clear meaning of the amended regulation is that when that claim is granted, the appeal board may proceed with the classification without referral to the Department of Justice. There being no clear conflict between the regulation and the statute, the Executive Order of the President should not be stricken down by the courts.

 It is not the province of the court to legislate. The exemptions provided for are matters of legislative grace. And while they may be liberally construed to accomplish the result intended, the courts may not by construction create a conflict between the Act of Congress and the procedural regulations, in order to strike down such regulations when a conflict does not clearly appear. Congress authorized the President to make the regulation in question. He made it. It is not in conflict with the statute. It became and is the law as effectively as if Congress had enacted it. The judgment is affirmed.